[No. A112832. First Dist., Div. One. Nov. 21, 2006.]

KAY MORRIS, Individually and as Personal Representative, etc., et al., Plaintiffs and Appellants, v.
AGFA CORPORATION et al., Defendants and Respondents.

## Counsel

Metzger Law Group, Raphael Metzger, Gregory A. Coolidge and Monica L. Frye for Plaintiffs and Appellants.

Murchison & Cumming, Edmund G. Farrell III and Eric P. Weiss for Defendant and Respondent Fuji Hunt Photographic Chemicals, Inc.

No appearance for Defendant and Respondent AGFA Corporation.

## Opinion

**MARCHIANO, P. J.**—This case presents an unusual forum non conveniens situation in which the decedent is alleged to have suffered some injury from exposure to chemicals in California, the forum selected by Texas plaintiffs, but subsequently experienced exposure to chemicals for almost two decades in Texas, the forum preferred by defendants.

Glenn Richard Morris died of leukemia in the State of Texas in February 2003. Plaintiffs are his widow and two minor children, who are Texas residents. Plaintiffs filed a California survival and wrongful death action against defendants, alleging that Mr. Morris (decedent) contracted leukemia from exposure to toxic chemicals manufactured by defendants which he used in his employment in printing shops. Most of decedent's employment, and all of his medical treatment, occurred in the State of Texas.

Defendants moved to stay or dismiss the action on the ground of forum non conveniens, arguing that the action should be tried in Texas. The trial court denied the motion to dismiss, but granted the motion to stay, finding that California was an inconvenient forum. Plaintiffs contend the trial court erred. We disagree and affirm because Texas is a suitable alternative forum and the trial court did not abuse its discretion in finding that California is a seriously inconvenient forum for the trial of the action.

## I. FACTS

From 1976 until 2001, decedent worked as a pressman for various commercial printing companies. From 1976 to 1981 he worked for Fremont Litho, Inc. (Fremont Litho), in Fremont, California. From October 1981 to July 1982 he worked for Consolidated Publications in Sunnyvale, California. It is undisputed that both Fremont Litho and Consolidated Publications are out of business.[1]

From July 1982 to July 1983 decedent worked for Publishers Choice Book Manufacturing in Mars, Pennsylvania. He then relocated to Texas.

Between September 1983 and March 2001, roughly 17 1/2 years, decedent worked for two printing companies in Austin, Texas. He worked for Sweets Printing Company from September 1983 to December 1986, and for Hart Graphics, Inc. (Hart Graphics), from January 1987 to March 2001. Hart Graphics then closed its Austin printing facility and decedent went to work as a landscaper for the city of Round Rock, Texas.

In November 2002, decedent was diagnosed with acute myelogenous leukemia. He was immediately admitted to a Houston hospital, where he remained until his death on February 2, 2003. From 1983 until his death 20 years later, decedent lived and worked only in the State of Texas. It appears from the record that decedent's widow lived with him in Texas during the pertinent time periods, and his children were born in Texas and have lived nowhere else.

In mid-2003, plaintiffs filed a survival and wrongful death complaint in the District Court of Travis County, Texas. Plaintiffs alleged they were Texas residents, and sought damages for negligence, gross negligence, strict liability, and breach of warranty against 14 corporate defendants. In their complaint and their response to defendants' request for disclosure, plaintiffs alleged that defendants manufactured, distributed and supplied various solvents, cleaners, and other substances to which decedent was exposed during his employment around printing presses, and that these substances contained benzene or benzene derivatives which caused decedent's leukemia.

Plaintiffs' response to the disclosure request listed several people with knowledge of facts relevant to the case. The majority of these persons were

---

[1] According to a declaration of counsel filed in support of the motion to stay or dismiss, plaintiffs' attorney made a representation at a case management conference that Fremont Litho was out of business. Defense counsel represented below that Consolidated Publications was out of business according to the records of the California Secretary of State. The trial court stated in its ruling on the motion that the two companies were no longer in business.

Texas residents. These included George Eschberger and Mark Goehmann, who worked with decedent at Hart Graphics.

The parties commenced discovery in the Texas action. On June 8, 2004, close to a year after filing their complaint, plaintiffs filed a "Notice of Nonsuit"—which was tantamount to a request for dismissal. On June 11, 2004, the Travis County District Court dismissed the action without prejudice.

On October 29, 2004, plaintiffs filed a complaint for survival and wrongful death in the Superior Court of Alameda County. They sought relief on theories of negligence, strict liability, fraudulent concealment, and breach of implied warranties, based on decedent's exposure to benzene and other toxic substances while working for the commercial printing companies mentioned above. They named as defendants 21 companies which they alleged manufactured, distributed, or supplied the toxic substances.

As defendants phrased it below, "The California complaint names some of the defendants named in the Texas [a]ction, plus several others [fn. omitted]." The California complaint alleged, as plaintiffs currently represent in their opening brief, that only two defendants are California corporations.

Discovery ensued. Plaintiffs responded to four sets of interrogatories in mid-February 2005.

On September 9, 2005, defendants filed a joint motion to stay or dismiss plaintiffs' California action based on the doctrine of forum non conveniens. (Code Civ. Proc., § 410.30, subd. (a).)[2] Defendants argued that California was an inconvenient forum because the action "has no connection to California," and the applicable public and private interest factors set forth in *Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744 [1 Cal.Rptr.2d 556, 819 P.2d 14] (*Stangvik*) weighed heavily in favor of a stay or dismissal. It was undisputed that the applicable Texas statutes of limitations had expired by the time the motion was filed. Defendants argued that the trial court could stay or dismiss the action even though the expiration of the Texas statutes of limitations effectively left plaintiffs without a forum.

Defendants based their motion in part on the February 2005 interrogatory responses, which showed that all of the approximately 100 physicians and medical providers who treated decedent work in Texas. The responses also listed 93 coworkers, supervisors and friends who plaintiffs claimed had

---

[2] Lead counsel for defendants, both below and on appeal, is counsel for defendant Fuji Hunt Photographic Chemicals, Inc.

personal knowledge of decedent's work history and illness. The vast majority are Texas residents who worked with decedent at Hart Graphics or Sweets Printing.

Only 19 of these 93 witnesses worked with decedent in California, i.e., at Fremont Litho or Consolidated Publishing. Plaintiffs could provide residence addresses for only five—and all five of these witnesses reside outside of California: one in Washington, one in Arizona, and three in Texas. A sixth witness was believed to live in Portland, Oregon. Plaintiffs listed most of the remaining 19 witnesses by their last known business address: Fremont Litho and Consolidated Publishing, both defunct companies.

Defendants also relied on declarations of three out-of-state witnesses, "selected at random among the 193 witnesses identified in plaintiffs' discovery responses": George Eschberger, who was identified in the disclosure response in the Texas action as a coworker of decedent's at Hart Graphics; Mark Goehmann, who was identified in the interrogatory responses as a coworker of decedent's at Hart Graphics; and Russell Peterson, identified as one of the 19 coworkers who worked with decedent in California.

Eschberger declared he was a resident of Austin, Texas. He met decedent "around 1986" while they both worked at Hart Graphics in Round Rock, Texas. They worked in the same building but "not always . . . on the same printing press." Eschberger left Hart Graphics in 1997 and had minimal contact since then with decedent. He had not been to California since he was in the Army in 1961. He and his wife both had medical conditions making it difficult for them to travel. He was retired and could not afford to travel to California. Traveling to testify in the California action "would be extremely inconvenient" and an "extreme financial hardship."

Goehmann declared he was a resident of Fredericksburg, Texas. He met decedent in August 1989 while they both worked at Hart Graphics. He left Hart Graphics in 2001 and had no further contact with decedent. He had never been to California and did not regularly travel outside Texas. He supported three children and his wife was pregnant with a fourth. He was employed full time and could not afford to take time off from work or pay travel expenses. Traveling to testify in the California action "would be extremely inconvenient" and an "extreme financial hardship."

Peterson's declaration was unsigned. The text of the declaration states that Peterson was a resident of Scottsdale, Arizona, knew decedent from working with him at Fremont Litho, and was self-employed as a repairman and was on call 24 hours a day, seven days a week. Traveling to testify in the California action "would be extremely inconvenient" and an "extreme financial hardship."

Plaintiffs opposed the motion. They argued that the motion was untimely because it was not filed within a reasonable time after defendants appeared in the action. They also argued that the motion was not supported by sufficient evidence. Plaintiffs challenged each of the three declarations. They objected that Peterson's declaration was not signed. They contended that Goehmann's declaration did not show that he "possesses any relevant, material, or admissible testimony to provide at trial"—despite the fact that plaintiffs designated him a witness in the Texas action. Plaintiffs argued that Eschberger's declaration was obtained by "deception" because defendants allegedly told him the action would only be transferred to Texas, not dismissed.

In a broader argument, plaintiffs claimed the evidence in support of the motion was insufficient because defendants did not identify the 93 coworkers and provide a description of their anticipated testimony and how it would be admissible. Plaintiffs concluded that the motion was based merely on "bald assertions and generalities."

On the merits, plaintiffs claimed that defendants had failed to establish that there was a suitable alternative forum because the statutes of limitation in Texas had expired. Plaintiffs also contended that the public and private factors set forth in *Stangvik, supra,* 54 Cal.3d 744, did not weigh heavily against California as the appropriate forum.

Plaintiffs claimed that the passage of time would make it difficult to identify most of the 93 coworkers. But plaintiffs were "aware of the whereabouts of a small sub-set of key co-worker witnesses who possess relevant information concerning [decedent's] work and exposures" at Fremont Litho, Sweets Publishing, and Hart Graphics. They submitted declarations of four of them, one a resident of Washington and three, including Eschberger, residents of Texas. All four coworkers were willing to travel to California and testify at trial.[3] Plaintiffs identified other coworkers as potential witnesses who either resided in California or a state other than California or Texas, and would have to travel in any event.

Plaintiffs also argued that the vast majority of decedent's medical providers would not be called as witnesses at trial.

Plaintiffs concluded: "[T]he evidence before the Court is that defendants have greatly overblown the spector [*sic*] of witness inconvenience in this action, and indeed no such witness inconvenience exists."

In reply, defendants represented that they would waive any defenses based on the applicable statutes of limitations in Texas, and would waive any

---

[3] Eschberger essentially recanted his declaration on behalf of defendants.

defenses based on personal or subject matter jurisdiction. They argued their motion was timely, that they had met their initial burden of establishing that California is an inconvenient forum, and that plaintiffs had shown only that "[a]t best, . . . four of the 193 identified potential witnesses will not be inconvenienced by a trial in Alameda." Defendants argued that "this case that has little real, if any, connection to the [S]tate of California" and that "this is a matter for Texas and for Texans."

In a detailed written ruling, the trial court denied the motion to dismiss, but granted the motion to stay. The trial court ruled that the motion was timely, and any delay in filing did not prejudice plaintiffs. The trial court went on to rule that (1) Texas was a suitable alternative forum because of defendants' agreement to waive any defenses based on the statutes of limitation or jurisdiction, and (2) that the balancing of the public and private interest factors set forth in *Stangvik, supra,* 54 Cal.3d 744, weighed in favor of litigating this matter in Texas.

The court stayed the California action "to permit [p]laintiffs to re-file their claims in Texas." The court retained jurisdiction over the action "only to allow for the highly unlikely situation where a defendant might assert a statute of limitations defense in Texas."

As we discuss further below, the trial court denied a motion for reconsideration based on evidence that should have been included in the initial opposition to the motion but was not, and thus was not a proper basis for reconsideration. (See *New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212–215 [37 Cal.Rptr.3d 338].)

## II. DISCUSSION

Plaintiffs contend (1) the motion was untimely, to their prejudice; (2) the motion was procedurally defective and lacked the minimally required evidentiary showing; (3) the trial court should have denied the motion as a matter of law because plaintiffs seek damages for an injury which occurred in California when decedent was a resident of California; and (4) the trial court abused its discretion by granting the motion to stay because the *Stangvik* public and private interest factors do not weigh heavily against California as the more convenient forum for this action.

### Timeliness

As the trial court noted, "Defendants [brought their] motion one year after the case was filed in October 2004, and nine months after receipt of the

discovery responses in February 2005 that are the basis for the motion." But the court also noted, "[t]here is no time limit for filing a motion to stay based on inconvenient forum."

Plaintiffs argue that such a motion must be filed within a "reasonable time" after the last defendant has appeared in the action. But as authority for that proposition plaintiffs cite four cases dealing with motions for changes of venue, not motions for stay or dismissal for forum non conveniens.[4]

In any case, the trial court found no prejudice to plaintiffs. While the motion "could have, and should have, been brought sooner[,] . . . there is no prejudice to [p]laintiffs in the delay because the case can be re-filed in Texas and all [d]efendants have agreed to consent to jurisdiction in Texas and that they will not assert the statute of limitations as a defense in Texas."

Plaintiffs dispute the no-prejudice finding, but rely largely on evidence brought to the trial court's attention for the first time on a motion for reconsideration. Through declarations of Mrs. Kay Morris and one of plaintiffs' counsel, plaintiffs argued that they and their counsel had invested a large amount of time and resources and plaintiffs were suffering serious financial hardship—which could be alleviated by the minor plaintiffs' speedy trial preference in California. (Code Civ. Proc., § 36.)

As noted above, the trial court denied reconsideration because of the failure to present this evidence in the initial opposition. The court noted it had already considered the question of delay, which "is only about six months." In explaining its original ruling, the court reasoned that this six-month delay "must also be considered in light of [p]laintiffs' decision to pursue the original case for 12 months in Texas, to wait almost 4 months between when the Texas case was dismissed and the California case was filed, and to assume the additional delay inherent in needing to re-serve all defendants in the California case."

It does not appear that the motion was untimely. In any event, any untimeliness did not prejudice plaintiffs.

*Procedural Defect/Minimal Evidentiary Showing*

In essence, plaintiffs argue that defendants failed to support their motion with sufficiently detailed affidavits, and thus have not made a minimal

---

[4] Those cases are *Cooney v. Cooney* (1944) 25 Cal.2d 202 [153 P.2d 334]; *Thompson v. Superior Court* (1972) 26 Cal.App.3d 300 [103 Cal.Rptr. 94]; *Adams v. Superior Court* (1964) 226 Cal.App.2d 365 [38 Cal.Rptr. 164]; and *Willingham v. Pecora* (1941) 44 Cal.App.2d 289 [112 P.2d 328].

evidentiary showing to support their argument—and the trial court's conclusion—that California is an inconvenient forum. Plaintiffs appear to argue that defendants had to provide declarations regarding each of the 93 coworkers, and perhaps the medical providers as well, listing their names, their anticipated testimony, reasons why the testimony would be admissible, whether the witness had been deposed, and why it would be inconvenient for the witness to travel to California. Plaintiffs also claim that the declarations supporting the motion provide insufficient information.

Plaintiffs rely primarily on change-of-venue cases, which do seem to require (or at least recommend) affidavits of factual particularity. Plaintiffs also rely on *Ford Motor Co. v. Insurance Co. of North America* (1995) 35 Cal.App.4th 604 [41 Cal.Rptr.2d 342] (*Ford Motor*), which makes the general assertion that "[t]here thus must be *evidence*—not merely bald assertions—to support the trial court's determination[]" that California is an inconvenient forum. (*Id.* at p. 610.) But the sole authority in support of this statement is *Bechtel Corp. v. Industrial Indem. Co.* (1978) 86 Cal.App.3d 45, 48 [150 Cal.Rptr. 29], which said only that such a determination must be supported by substantial evidence.

Plaintiffs present no authority for a requirement of particularized affidavits in forum non conveniens cases. We have found none. As another division of the First District recently stated: "*Stangvik* did not require an extensive evidentiary showing. The principal evidentiary showing *Stangvik* requires is that trial may be had in the alternative forum and that some form of relief may be granted. . . . Examination of the private and public interests at stake involve more general considerations." (*Campbell v. Parker-Hannifin Corp.* (1999) 69 Cal.App.4th 1534, 1542 [82 Cal.Rptr.2d 202]; see, e.g., *Hemmelgarn v. Boeing Co.* (1980) 106 Cal.App.3d 576, 585–590 [165 Cal.Rptr. 190] [court looks to general facts of case and general considerations under forum non conveniens factors, and makes both a quantitative and a qualitative analysis].)

In other words, the evidence before the court, which may include affidavits of the parties, discovery responses, and the undisputed general knowledge of the nature of the action, need only be sufficient to give the court the ability to soundly exercise its discretion regarding the applicability of the general considerations of the *Stangvik, supra*, 54 Cal.3d 744, factors to the question of forum non conveniens. The evidence in the present case is sufficient. That evidence includes discovery responses showing that the vast majority of almost 200 witnesses (identified by plaintiffs) reside in Texas, and the undisputed fact that decedent worked in Texas for the vast majority of his career in commercial printing where chemical exposure allegedly took place.

### *Effect of Decedent's California Injury and Residency*

Plaintiffs argue that the trial court should have denied the motion as a matter of law because plaintiffs seek damages for an injury which occurred in California when decedent was a resident of California. This argument was raised only in passing below. In any case, it is without merit.

Plaintiffs base their argument on the premise that an action by a California resident for an injury occurring in California cannot be stayed or dismissed under the doctrine of forum non conveniens. We note at the outset that plaintiffs are not California residents. Apart from that, we cannot accept plaintiffs' reasoning.

Plaintiffs rely principally on *Archibald v. Cinerama Hotels* (1976) 15 Cal.3d 853, 858–859 [126 Cal.Rptr. 811, 544 P.2d 947] (*Archibald*). But *Archibald* held only that an action by a California resident cannot be *dismissed* under the doctrine of forum non conveniens, except under exceptional circumstances. (*Ibid.*; see *Century Indemnity Co. v. Bank of America* (1997) 58 Cal.App.4th 408, 411 [68 Cal.Rptr.2d 132] (*Century Indemnity*).)

*Archibald* explicitly acknowledged that an action by a California resident could be *stayed* under the doctrine of forum non conveniens. (*Archibald, supra*, 15 Cal.3d at p. 860; see *Century Indemnity, supra*, 58 Cal.App.4th at pp. 411–412.) "The trial court . . . has considerably wider discretion to grant stays precisely because under a stay California retains jurisdiction. [Citation.] Even an action brought by a California resident is subject to a stay. [Citation.]" (*Century Indemnity, supra*, at pp. 411–412.)

The trial court in the present case did not lack the authority to stay the action. The question now is whether the trial court's ruling was proper on the merits.

### *The* Stangvik *Factors*

Application of the *Stangvik* factors involves a two-step analysis.

"In determining whether to grant a motion based on forum non conveniens, a court must first determine whether the alternate forum is a 'suitable' place for trial. If it is, the next step is to consider the private interests of the litigants and the interests of the public in retaining the action for trial in California. The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for

attendance of unwilling witnesses. The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation. [Citations.]" (*Stangvik, supra*, 54 Cal.3d at p. 751.)

The ultimate question is whether the balancing of the *Stangvik* factors shows that California is a seriously inconvenient forum. (*Ford Motor, supra*, 35 Cal.App.4th at p. 611.) The defendant, as moving party, bears the burden of proof. (*Stangvik, supra*, 54 Cal.3d at p. 751.)

The trial court's first determination, whether there is a suitable alternative forum, is a nondiscretionary legal question subject to de novo review. (*American Cemwood Corp. v. American Home Assurance Co.* (2001) 87 Cal.App.4th 431, 436 [104 Cal.Rptr.2d 670] (*American Cemwood*); *Chong v. Superior Court* (1997) 58 Cal.App.4th 1032, 1036–1037 [68 Cal.Rptr.2d 427] (*Chong*); see *Stangvik, supra*, 54 Cal.3d at p. 752, fn. 3.) The second determination, the weighing of private and public factors, is discretionary and subject to review only for an abuse of discretion—and we must accord substantial deference to the trial court's balancing of the factors. (*Stangvik, supra*, at p. 751; *American Cemwood, supra*, at p. 436; *Chong, supra*, at p. 1037.)

█ 1. "The availability of a suitable alternative forum for the action is critical." (*American Cemwood, supra*, 87 Cal.App.4th at p. 435.) A forum is suitable if there is jurisdiction and no statute of limitations bar to the action. It is sufficient that the action can be brought, although not necessarily won, in the suitable alternative forum. (*Id.* at p. 437; *Chong, supra*, 58 Cal.App.4th at pp. 1036–1037.)

Here the trial court found that Texas was a suitable alternative forum. On de novo review, we agree with the trial court's conclusion: "All defendants have agreed to consent to jurisdiction in Texas and state that they will not assert the statute of limitations as a defense in Texas. Therefore, there is no bar to proceeding in Texas." The trial court correctly relied on the Judicial Council comment to Code of Civil Procedure section 410.30, quoted in *Stangvik, supra*, 54 Cal.3d at page 752, which states that a forum is suitable if there is jurisdiction and a defense stipulation not to raise the defense of the statute of limitations in the alternative forum.

2. We now turn to an abuse-of-discretion review of the trial court's balancing of the *Stangvik* factors. Those factors have evolved over many years in California law, as described in Pawlicki, *Stangvik v. Shiley and*

*Forum Non Conveniens Analysis: Does a Fear of Too Much Justice Really Close California Courtrooms to Foreign Plaintiffs?* (Spring 2000) 13 Transnat'l Law. 175, 199–214 (Pawlicki).[5]

■ We first note some general principles. A plaintiff's choice of forum "is entitled to great weight even though the plaintiff is a nonresident." (*Ford Motor, supra,* 35 Cal.App.4th at p. 610; accord, *Hansen v. Owens-Corning Fiberglas Corp.* (1996) 51 Cal.App.4th 753, 760 [59 Cal.Rptr.2d 229] (*Hansen*).)[6] But a plaintiff's choice of forum can be disturbed if the balance is strongly in favor of the defendant. (*Hansen, supra,* at p. 760; *Ford Motor, supra,* at pp. 610–611.)

The defendant's residence is also a factor to be considered in the balancing process. A corporate defendant's state of incorporation and principal place of business is presumptively a convenient forum. (See *Stangvik, supra,* 54 Cal.3d at p. 755.) As noted, two of the corporate defendants in the present case are California corporations. But "[a] resident defendant may overcome the presumption of convenience by evidence that the alternate jurisdiction is a more convenient place for trial of the action." (*Id.* at p. 756, fn. omitted.)

■ The trial court must be flexible in its weighing of the factors. "[P]rivate and public interest factors must be applied flexibly, without giving undue emphasis to any one element." (*Stangvik, supra,* 54 Cal.3d at p. 753.) The doctrine of forum non conveniens may not be based "on identification of a single factor rather than the balancing of several. [Citation.]" (*Ibid.,* fn. omitted.)

"An undue emphasis on a single factor is especially threatening to a balanced analysis because some of the matters to be weighed will by their nature point to a grant or denial of the motion. For example, the jurisdiction's interest in deterring future wrongful conduct of the defendant will usually favor retention of the action if the defendant is a resident of the forum, whereas the court congestion factor will usually weigh in favor of trial in the alternate jurisdiction." (*Stangvik, supra,* 54 Cal.3d at p. 753, fn. 4.) And the court must consider the public policy considerations "such as California's

---

[5] Pawlicki includes a helpful discussion of that evolution, showing how some factors present in older law were no longer considered pertinent by *Stangvik.* (Pawlicki, *supra,* at pp. 210–222.) This discussion provides an historical backdrop for our analysis, but is not directly relevant to this appeal.

[6] There appears to be some slight confusion in the law. Dicta in *Stangvik* suggests that only a resident plaintiff's forum choice is entitled to great weight—but, as *Ford Motor* observed, the actual holding of *Stangvik* involved a nonresident who was a resident of a foreign country, not a resident of another state of the United States. The decedents, and their wives and children suing for wrongful death, were from Norway and Sweden. (See *Stangvik, supra,* 54 Cal.3d at pp. 749, 754–755; *Ford Motor, supra,* 35 Cal.App.4th at pp. 610–611.)

interest in deciding actions against resident corporations whose conduct in this state causes injury to persons in other jurisdictions." (*Id.* at p. 756, fn. 10.)

Here the trial court did not abuse its discretion by finding that on balance, California is a seriously inconvenient forum. In weighing the private interest factors, the trial court noted that decedent's employers from 1983 until his death 20 years later are in Texas, "as are the vast majority of the witnesses concerning the decedent's work history and medical care." In contrast only decedent's employers from 1976 to 1982 were in California. They are now out of business, "so there is presumably little physical evidence in this state."

Thus, the private interest factors of ease of access to proof and the cost of obtaining witnesses weigh heavily in favor of Texas as a forum. As we observed above, the vast majority of decedent's coworkers who have been identified in this lawsuit are Texas residents who worked with decedent in Texas from 1983 to 2001. Furthermore, all of decedent's medical care was administered in Texas, and the approximately 100 medical provider witnesses are located in Texas. Plaintiffs, who will no doubt also be witnesses, are Texas residents. The ease of access to proof and the cost of obtaining it bespeak of Texas, not California, as the convenient forum for this action—as does the potential burden of compelling unwilling Texas witnesses to testify in California.[7]

This case is akin to *Hansen*, a decision of Division Two of the First District, which arose from an asbestos tort suit by Montana plaintiffs in a California trial court against various defendants. However, in *Hansen* none of the exposure took place in California. The *Hansen* court held that the balance was strongly in favor of the defendants, and overcame the plaintiffs' choice of California as a forum—making Montana the appropriate forum for the action. (*Hansen, supra,* 51 Cal.App.4th at pp. 753–754.)

The trial court in the present case relied, we think appropriately, on this passage from *Hansen*: "John and Mary Hansen lived in Montana almost their entire lives, almost all of the alleged asbestos exposure occurred in Montana, and none is alleged to have occurred in California. Most potential witnesses reside in Montana, including all the treating physicians and all the known

---

[7] In a declaration filed below, plaintiffs' counsel stated that his office had provided defendants with records of decedent's employment with Sweets Printing and Hart Graphics, as well as decedent's medical records. Counsel could not foreclose the possibility that some documents remained in Texas, which might have to be "obtain[ed] through a . . . custodian of record deposition." In any case, defendants' access to records, as opposed to witnesses they may or may not wish to depose, is not determinative. The trial court was aware of the record disclosure and still exercised its discretion to stay the action.

coworkers of John Hansen. In such circumstances, the ease of access of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process for the attendance of unwilling witnesses weigh in favor of Montana." (*Hansen, supra*, 51 Cal.App.4th at p. 760.) In light of our deferential standard of review, we conclude that the trial court's weighing of these private interest factors in favor of Texas was not an abuse of discretion.

In weighing the public factors, the trial court noted that plaintiffs "have lived in Texas for the past 20 years and the claims concern matters that took place in Texas. These factors suggest that [a] Texas court and Texas jurors should resolve this case."

As *Hansen* observed, "California courts . . . have little or no interest in litigation involving injuries incurred outside of California by nonresidents. It seems unduly burdensome for California residents to be expected to serve as jurors on a case having so little to do with California. The competing interests of California and Montana strongly weigh in favor of litigating this matter in Montana." (*Hansen, supra*, 51 Cal.App.4th at p. 760.)

The only appreciable difference between the present case and *Hansen* is that decedent was employed in California, and exposed to benzene products, for the first six years of his 25 years of employment in printing shops. But the difference is not material. Decedent spent the vast majority of his employment in Texas, the majority of the benzene exposure occurred in Texas at Texas printing companies, decedent was diagnosed and treated in Texas, and decedent passed away in Texas. Most of the coworkers and medical witnesses are in Texas, not California. His widow and surviving children are Texas residents with few, if any, ties to California. Only two defendants are California corporations.

It is true that California may have an interest in regulating California corporations that produce products that cause harm to a resident of another state like decedent who lived and worked primarily in Texas. (See *Stangvik, supra*, 54 Cal.3d at p. 759.) But this public interest factor is insufficient to tip the balance in favor of California as a forum. Only two defendants are California corporations. Texas, where most of the chemical exposure occurred, and where decedent lived, worked, was treated, and died, has a superior interest in hearing this litigation. (See *id.* at pp. 759–760.) Successful litigation in Texas would have the same deterrent effect that a California court might afford.

California has little interest in this litigation given decedent's lengthy work history in Texas and the relative insignificance played by California corporations among defendants. The trial court did not abuse its discretion by finding that the public interest factors weigh in favor of litigating this matter in Texas.[8]

In its original ruling, the trial court rejected plaintiffs' argument that decedent's injury was caused in California because that was the site of his earliest benzene exposure, and the California exposure was in a stronger dosage than subsequent exposure in Texas. The court ruled that plaintiffs were making a factual assumption that decedent's injury was caused in California. The court also noted that even if California were the location of the injury, it would not be the location of the witnesses and physical evidence.

In their motion for reconsideration, plaintiffs presented the declaration of a physician who has studied benzene-induced leukemia. The physician, citing various reasons, concluded that "the primary cause of [decedent's] leukemia would likely have been his occupational exposure to benzene . . . in California," and that his exposure in California "would have been greater (more intense) than his solvent exposure in Texas[.]"

Again, the trial court ruled this evidence improper for reconsideration because it could have been presented with the original motion. The court noted it had already considered and rejected plaintiffs' argument that the leukemia was caused in California. The court also noted that, as it stressed in its original ruling, even if California were the location of the injury, it would not be the location of the witnesses and physical evidence.

■ The trial court did not abuse its discretion in weighing the *Stangvik* factors and determining that California is a seriously inconvenient forum— and that the convenient forum for plaintiffs' action is the State of Texas.[9]

---

[8] At oral argument, we discussed with the parties the question whether Texas tort law was less favorable to plaintiffs than California's, in particular with regard to issues of proof, available defenses, and limitations on damages. There was a suggestion that California tort law would be more favorable to plaintiffs. But comparative law questions are not pertinent to a forum non conveniens analysis, except in extreme cases. "[T]he fact that California law would likely provide plaintiffs with certain advantages of procedural or substantive law cannot be considered as a factor in plaintiffs' favor in the forum non conveniens balance." (*Stangvik, supra,* 54 Cal.3d at p. 754.) The only exception to this rule is where the alternate forum "provides no remedy at all." (*Id.* at p. 764.) That is not the case here where a fair remedy is available in Texas, albeit with some potential limitations.

[9] We note that plaintiffs rely on *Ford Motor* only for their argument that defendants have presented insufficient evidence. Had plaintiffs chosen to rely on *Ford Motor* for its merits, because it reversed a finding that California was an inconvenient forum, such reliance would

## III. DISPOSITION

The order granting defendants' motion to stay plaintiffs' California action under the doctrine of forum non conveniens is affirmed.

Swager, J., and Margulies, J., concurred.

---

have been unavailing. In *Ford Motor* there were a "wealth of factors favoring California as a forum . . . ." (*Ford Motor, supra*, 35 Cal.App.4th at p. 618 [summarizing factors discussed in the opinion at length].)