[No. B214955. Second Dist., Div. Eight. May 27, 2010.]

JOSE MAZON MARTINEZ et al., Plaintiffs and Appellants, v.
FORD MOTOR COMPANY et al., Defendants and Respondents.

COUNSEL

Bisnar | Chase, Brian D. Chase, John V. Bell and Jill P. McDonell for Plaintiffs and Appellants.

Yoka & Smith, Walter M. Yoka, David T. McCann and Elizabeth A. Kurtz for Defendant and Respondent Cooper Tire & Rubber Company.

Snell & Wilmer, Robert J. Gibson, Richard A. Derevan, Brendan M. Ford and Jessica Charles for Defendant and Respondent Ford Motor Company.

OPINION

**RUBIN, J.**—Two survivors and the heirs and estates of two decedents from a single-car crash in Mexico of a Ford Explorer that had been purchased in San Diego County appeal from the judgment dismissing their complaint for forum non conveniens. We reverse and remand for further proceedings.

## FACTS AND PROCEEDINGS

Appellant Jose Mazon Martinez was driving a Ford Explorer in which appellant Jesus Manuel Ibarra Campos and decedent Andres Esparza Hernandez and his wife, decedent Georgina Isabel Ibarra Campos de Esparza, were passengers. In their complaint below, appellants alleged: "On or about February 9, 2006, at approximately 3:00 P.M., the decedents and the plaintiffs, JOSE MAZON MARTINEZ and JESUS MANUEL IBARRA CAMPOS were traveling in the SUBJECT VEHICLE, in Mexico, towards Churintzio, Michoacan, on the Mexico City-Nogales Highway, in the State of Michoacan."

Their complaint further alleged that the tread on the Explorer's defectively designed and manufactured right rear tire separated from the wheel, causing

driver Martinez to lose control of the Explorer.[1] According to the complaint, defects in the Explorer caused it to career off the road and roll over, severely injuring driver Martinez and passenger Jesus Manuel Ibarra Campos and killing husband and wife Andres Esparza Hernandez and Georgina Isabel Ibarra Campos de Esparza.

Survivors Martinez and Campos and the parents of the dead passengers, appellants Regino Ibarra Morin and Guadalupe Campos de Morin for Georgina Isabel Ibarra Campos de Esparza, and appellants Andres Esparza Silva and Carlota Hernandez de Esperza for Andres Esparza Hernandez, filed a complaint in October 2006 in San Diego Superior Court. They alleged causes of action for strict and negligent product liability, negligent maintenance and repair, and negligent infliction of emotional distress. They named as defendants the Explorer's manufacturer, respondent Ford Motor Company; the manufacturer of the right rear tire, respondent Cooper Tire & Rubber Company; the San Diego auto dealership from which the Explorer was purchased, Leader Auto Sales; and, the San Diego tire company that sold the defective tire, Power Tires.[2] Appellants attached as exhibits to their complaint certified Spanish-to-English translations of official death certificates issued by Mexican authorities for decedents Georgina Isabel Ibarra Campos and Andres Esparza Hernandez.[3] The death certificates identified decedents' "nationality" as "Mexican" and stated they died in Vista Hermosa in the Mexican state of Michoacan. Additionally, the certificates identified as "Mexican" the "nationality" of decedents' parents, who were suing for themselves and for the estates of their dead children: appellant Regino Ibarra Morin and appellant Guadalupe Campos de Ibarra, respectively father and mother to Georgina Isabel Ibarra Campos, and appellant Andres Esparza Silva and Carlota Hernandez Morales, respectively father and mother to Andres Esparza Hernandez.

In January 2007, respondents Ford and Cooper Tire filed their answers to appellants' complaint. At the time respondents filed their answers, which did not allege forum non conveniens, both respondents were defendants in Judicial Council Coordination Proceeding No. 4292 in Los Angeles Superior Court known as the "Winston Tire Cases." The coordinated proceeding was

---

[1] Mexican police concluded "unsafe tires, causing the right rear tire to explode" and the Explorer's excessive speed caused the accident.

[2] Leader Auto Sales and Power Tires did not respond to appellants' complaint and appellants took their defaults in March 2007. They are not parties to this appeal.

[3] The complaint was in English prepared by English speakers and the original death certificates were in Spanish prepared by Spanish speakers. Presumably reflecting different cultural practices in the United States and Mexico in use of mother's and father's surnames in naming a child, slight differences exist in the decedents' and plaintiffs' names in the complaint and death certificates. Out of fidelity to the record, we state the names throughout our opinion as they appear in their respective documents. The parties have not argued those differences were material or confused them.

instituted in 2003 in the wake of numerous lawsuits throughout California that alleged Cooper Tire had negligently designed and manufactured vehicle tires. In ordering coordination, the Los Angeles Superior Court had found:"[E]ach [tire defect] case centers on liability theories of design as well as manufacturing defect, the common glue being that all injuries were allegedly caused by defective tire treads separating from tires made by Cooper. At least three issues predominate: (1) whether the tires were defectively designed; (2) whether the tires were defectively manufactured; and (3) whether, in part, injury resulted therefrom."

The same day Cooper Tire served its answer to appellants' complaint, Cooper Tire petitioned to transfer appellants' complaint from San Diego Superior Court to Los Angeles to be included in the Winston Tire coordinated proceeding. Ford did not object to the transfer. Two weeks later, the coordination trial court in Los Angeles granted the petition and in February 2007 San Diego Superior Court transferred the case to Los Angeles.

Respondents thereafter pursued discovery against appellants. In May 2007, Ford individually served on each appellant requests for production, form interrogatories, and special interrogatories, which appellants answered in August 2007. The discovery Ford propounded on appellant Guadalupe Campos de Morin, the mother of decedent Georgina Isabel Ibarra Campos, is representative of the discovery that Ford sought from all six appellants.

Ford served on Guadalupe Campos de Morin 39 requests for inspection and production of documents in her possession. The subject matter of the documents Ford sought included: the Explorer's purchase; all communications by anyone regarding the accident; documents from Ford about the Explorer; depictions of the Explorer's condition at any time before or after the accident; defects and repairs to the Explorer; depictions of any "scene, place or object relevant to or connected" to the accident; documents "filed with or created by governmental agencies or insurance companies" that related to the accident; postaccident tests and inspections of the Explorer; other accidents in which the Explorer was involved; Morin's settlement demands; payments by insurers; medical history and treatment of Morin's deceased daughter since 1996; medical records of Morin's daughter's injuries from the accident; her daughter's employment history and earnings since 1996; lawsuits and other legal actions since 1996 involving Morin or her daughter; civil or criminal complaints against them; and all other documents relating to the liability of Ford, Cooper Tire, Leader Auto Sales, and Power Tires.

Ford also served individually on Morin and each of the other appellants 59 form interrogatories. Those interrogatories, each of which had subparts, sought information about each appellant's insurance; physical, mental, and emotional injuries; medical history; property damage; loss of income or earning capacity; and other damages.

Finally, Ford served almost six dozen special interrogatories on each appellant. Again, the 71 special interrogatories Ford propounded on Guadalupe Campos de Morin were largely representative of those served on all six appellants, except the interrogatories to surviving appellants (driver Jose Mazon Martinez and passenger Jesus Manuel Ibarra Campos) did not seek information about decedents. Three of the special interrogatories asked about Morin's citizenship, place of domicile, and addresses for the previous five years. More than two dozen special interrogatories sought information about the Explorer at issue, such as its purchase, use, service, repair, and alleged defects. More than a dozen special interrogatories sought information about past and future financial responsibilities and means of support for Morin and her daughter before her daughter's death. Five special interrogatories sought information about the general health, physical condition, and disabilities of Morin's daughter. Eight special interrogatories sought information about Morin's theories of liability for Ford, Cooper, Power Tires, and Leader Auto Sales. And finally, 11 special interrogatories sought miscellaneous information, such as proof Morin's daughter was wearing a seatbelt when the accident occurred, and documentation of medical bills and burial expenses paid by Morin for her daughter.

Cooper Tire served discovery on appellants in April 2007, which appellants answered in July 2007. Cooper Tire served on each appellant a 28-page "plaintiff fact sheet" specially prepared for the coordinated Winston Tire proceeding. The factsheet asked questions about the following:

—Whether the appellant had served in the American military or been rejected for military service for health reasons.

—Workers' compensation claims, Social Security disability claims, or lawsuits filed in the previous 10 years that alleged bodily injury.

—Felony convictions.

—Personal information about any spouse or children.

—Information about the Explorer at issue, including its registered and prior owners, mileage, alterations and modifications, service and repair history, and previous accidents.

—Information about the Explorer's tires, including their original purchase and replacement, mileage, and inflation pressure at the time of the accident.

—Details about the accident, including names and address of the driver and passengers, the identity of any other cars or drivers involved in the accident, and statements or documents provided by independent witnesses.

—Availability and particulars of insurance coverage.

—Appellant's medical history, details about physical, mental, and emotional injuries from the accident, and current medical condition.

Cooper Tire's factsheet also demanded copies of various documents, including:

—Accident reports and photographs of the accident scene, the Explorer, and the allegedly defective tire.

—Sales documents from the purchase of the Explorer and tires.

—The Explorer's maintenance and service records.

—Medical records for treatment of injuries from the accident.

—Documents from workers' compensation, Social Security, or other disability proceedings.

—Income information, including federal tax returns, substantiating lost earnings.

—Medical bills.

Besides the 28-page factsheet, Cooper Tire also served 43 special interrogatories on each appellant. The special interrogatories that Cooper Tire

propounded on driver Jose Mazon Martinez, which are representative of those served on all appellants, asked, among other things, about the following:

—Photographs, films, or videotapes depicting the accident scene.

—Diagrams, reproductions, or models of "any place or thing" concerning the accident.

—Reports about the accident.

—Inspections of the accident scene.

—Treatment by health care providers.

—Unresolved injuries and ongoing treatment or need for medication because of the accident.

—Need for future medical care.

—Employment history.

—Legal violations that contributed to the accident.

—Defects or malfunctions in the Explorer that caused the accident or injuries.

—Evidence, including documents and witnesses, of purported design defects of the Explorer's tires.

—Evidence, including witnesses and documents, of purported manufacturing defects in the Explorer's tires.

—Breaches of warranty by Cooper Tire.

—Failures by Cooper Tire to warn of hazards.

All told, Ford and Cooper Tire propounded more than 1,400 pages of written discovery on appellants. Appellants' responses spanned more than 650 pages. Additionally, Cooper Tire took possession of the tires at issue by July 2007.

In February 2008, Ford and appellants unsuccessfully attempted to resolve the lawsuit through mediation. (Cooper Tire did not participate.) When the attempted mediation failed, Ford filed its motion to dismiss for forum non

conveniens, in which Cooper Tire joined. They asserted the ties of appellants' lawsuit to Mexico predominated over any ties to California, making Mexico the appropriate forum for trying the case. Respondents noted that the Explorer at issue was owned, operated, and registered in Mexico at the time of the accident in Mexico, and all the plaintiffs lived in Mexico. The first responders to the accident were Mexican authorities and the physicians who treated the accident's victims were Mexican. Additionally, Mexican officials conducted the postaccident investigation. In contrast to the accident's ties to Mexico, respondents asserted the lawsuit's ties to California were minimal. The two California-based defendants, Leader Auto Sales and Power Tires, had defaulted and the remaining defendants, respondents Ford and Cooper Tire, were corporations based outside California.

Appellants opposed the motion to dismiss for forum non conveniens. Their principal argument was respondents delayed their motion to dismiss in order to take advantage of discovery mechanisms in California that do not exist in Mexico. In reply, respondents asserted, and reiterate on appeal, that their motion was timely because they had no grounds to move for dismissal for forum non conveniens until they had conducted discovery. They argued to the trial court that appellants' "complaint did not establish a basis for forum non conveniens, because it did not specify the residency or citizenship of any of the Plaintiffs or the Plaintiffs' decedents. . . . Ford only learned of Plaintiffs' Mexican residency and citizenship when it received discovery responses in August 2007."[4]

The trial court granted the motion and entered its order of dismissal after concluding California was a "seriously inconvenient forum" in which to try appellants' lawsuit. The court's 12-page order did not address the timeliness of Ford's motion or the prejudice, if any, from respondents' pursuit of discovery before Ford filed the motion to dismiss. This appeal followed.[5]

## DISCUSSION

The trial court did not address appellants' principal argument against respondents' motion to dismiss for forum non conveniens: the motion was prejudicially untimely after respondents had received extensive discovery of

---

[4] We note that even if one accepts Ford's assertion, it does not address the delay between Ford's receipt of that discovery in August 2007 and its motion eight months later in April 2008 to dismiss for forum non conveniens.

[5] The court bifurcated the default prove-up trials against Power Tires and Leader Auto Sales when it dismissed respondents from the lawsuit for forum non conveniens. Additionally, the court granted the motion to dismiss without prejudice to appellants' right to refile their complaint in California if Mexico failed to accept jurisdiction in the matter.

matters unrelated to the motion.[6] On review, we apply the traditional appellate presumption that the trial court rejected appellants' untimeliness argument when it ruled in respondents' favor. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 [275 Cal.Rptr. 797, 800 P.2d 1227]; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193]; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295 [240 Cal.Rptr. 872, 743 P.2d 932]; *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58 [58 Cal.Rptr.3d 225].) But regardless of whether our presumption actually comports with the trial court's reasoning, we hold the court erred when it rejected appellants' contention that the motion was prejudicially untimely.

■ Forum non conveniens is an equitable doctrine. (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751 [1 Cal.Rptr.2d 556, 819 P.2d 14].) It invokes a trial court's discretionary power to decline to exercise the jurisdiction it has over a cause of action when it believes the action may be more appropriately and justly tried elsewhere. (*Ibid.*) Grounded in equity, its purpose is to see that equity is done. (See, e.g., *Toscano v. Greene Music* (2004) 124 Cal.App.4th 685, 693–694 [21 Cal.Rptr.3d 732]; *Elbert, Ltd. v. Federated etc. Properties* (1953) 120 Cal.App.2d 194, 206 [261 P.2d 743] ["It is a measure of the virility and flexibility of equitable principles that they may be applied to the end that neither party is permitted to secure an advantage to the prejudice of another . . . ."].) We review a trial court's application of the doctrine for abuse of discretion. (*Roman v. Liberty University, Inc.* (2008) 162 Cal.App.4th 670, 682 [75 Cal.Rptr.3d 828].)

Mexico, the forum the trial court deemed more suitable than California in which to try appellants' lawsuit, does not allow the type or scope of discovery that California permitted respondents to propound here. Mexico does not allow written discovery akin to interrogatories and provides for only limited requests for production of documents. Indeed, Ford's expert witness on Mexican law stated, "We don't have discovery in Mexico." Although Ford's witness may have been slightly exaggerating, we nonetheless accept as well taken the point that Ford and Cooper Tire could not have received in Mexico the discovery that they got while litigating in California.

■ A party abuses the discovery process when it takes advantage of California's laws and legal processes to propound discovery beyond the scope of establishing the grounds for a forum non conveniens motion and then, after getting its discovery, asserts California is an inconvenient forum. (See, e.g., *Groom v. Health Net* (2000) 82 Cal.App.4th 1189, 1196 [98 Cal.Rptr.2d 836]

---

[6] Ford attributes the court's omission to appellants' counsel not raising the motion's untimeliness at oral argument on the motion. Ford cites no authority, however, that an argument a party unambiguously asserts in its papers is waived because the party does not repeat it at oral argument.

[prejudice when party uses discovery not available in arbitration to discover plaintiff's strategy and evidence before moving to compel arbitration].) The inequity of respondents' pretrial maneuvers is especially pronounced given that Cooper Tire, with Ford's acquiescence, transferred appellants' complaint from appellants' chosen jurisdiction—San Diego County where the Ford Explorer was purchased and the allegedly defective tire supplied—to the coordination proceedings in Los Angeles. Respondents' successful transfer of appellants' complaint to Los Angeles conflicts with their assertion that California is an inconvenient forum because the coordination proceedings presuppose the efficiency and convenience of trying multiple cases that share "the common glue" that tires designed and manufactured by Cooper Tire caused the injuries alleged in the coordinated lawsuits.

Respondents note that the law imposes no express time limit on a party's forum non conveniens motion, and thus contend their motion filed in April 2008, 18 months after appellants filed their complaint, was timely. For example, in *Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452 [51 Cal.Rptr.3d 301] (*Morris*), the court granted a motion filed one year after the plaintiffs filed their complaint. And in *Britton v. Dallas Airmotive, Inc.* (2007) 153 Cal.App.4th 127, 135 [62 Cal.Rptr.3d 487] the court granted a motion made one year after most of the defendants had answered.

Respondents' reliance on these decisions is unavailing, however, because those decisions found the plaintiffs suffered no prejudice from the defendants' belated motions since the defendants had not preceded their motions with conduct that gave them an undeserved advantage in their cases. For example, in *Morris, supra*, 144 Cal.App.4th 1452, a mother and her children filed their complaint in California in 2004 following the death a year earlier of their husband and father from his decades-long exposure to chemicals while working in Texas. The husband, who had last worked in California in 1982, was diagnosed with leukemia in 2002 and died in 2003. (*Id.* at p. 1457.) Before moving to dismiss the case based on California being an inconvenient forum, the defendants served the plaintiffs with discovery directed toward the defendants' forum non conveniens motion. (*Id.* at pp. 1460–1461.) In opposing the defendants' motion, the plaintiffs did not argue the defendants' pursuit of discovery had prejudiced them. Indeed, the appellate court's discussion in *Morris* indicates the plaintiffs did not offer any evidence of prejudice until moving for reconsideration of the trial court's order granting the motion to dismiss. But even by that late juncture, the only evidence of prejudice the plaintiffs could muster was the plaintiffs' loss of their speedy trial preference in California if the case moved to Texas. According to them, delaying their trial imposed an undue financial burden on them. (*Id.* at p. 1460.) The court found the plaintiffs' argument did not establish prejudice from the defendants having waited a year to file their motion. (*Id.* at p. 1461.)

Respondents' reliance on *Britton v. Dallas Airmotive, Inc., supra,* 153 Cal.App.4th 127, is similarly unavailing. There, the defendant filed its motion to dismiss for forum non conveniens one year after most of the defendants had answered the complaint. The appellate court held the motion was timely. (*Id.* at p. 131.) Explaining its reasoning, the court noted that discovery directed toward developing the factual underpinnings of a motion for forum non conveniens might be necessary, and thus, by implication, not prejudicial. (*Id.* at p. 135.) As support for its observation, the appellate court cited the discussion in *Morris* finding no prejudice from a one-year delay between the filing of the complaint and the filing of the motion to dismiss.

We find the decision in *Roulier v. Cannondale* (2002) 101 Cal.App.4th 1180 [124 Cal.Rptr.2d 877] more illuminating on the subject of prejudicial delay than the two cases respondents cite. If one substitutes Explorer and rear tire for "bicycle," *Roulier*'s parallels to our case here are plentiful. While visiting California, the plaintiff in *Roulier* bought a bicycle which he took back with him to Switzerland where he lived. While riding the bicycle in Switzerland, he suffered serious injuries. He sued the California bicycle shop and the bicycle's East Coast-based manufacturer in Los Angeles Superior Court for making and selling a defective bicycle. (*Id.* at p. 1183.) The manufacturer served on the plaintiff over 50 form interrogatories, some of which involved matters unrelated to forum non conveniens. (*Id.* at pp. 1184, 1191.) The plaintiff served his discovery responses. The manufacturer thereafter moved to dismiss the complaint for forum non conveniens.

At this point *Roulier*'s parallels with our case end because the path that the trial court took in that case diverged from the course the trial court took here. The *Roulier* trial court recognized that the plaintiff's accident happened in Switzerland and he had received medical care in that country, but the court denied the motion to dismiss because " 'the site of the accident is collateral to the issues raised by products liability and breach of warranty actions. Having the matter heard in California will ease the access to evidence regarding the design and manufacture of the subject bicycle, both of which took place in the United States.' " (*Roulier v. Cannondale, supra,* 101 Cal.App.4th at p. 1184.) The appellate court concluded the trial court was correct. (*Id.* at pp. 1184–1186, 1192–1193.) Weighing in favor of the trial court's ruling was the appellate court's disapproval of the manufacturer's moving to dismiss after pursuing discovery that went beyond matters needed to establish forum non conveniens. (*Id.* at p. 1191.) Viewing the manufacturer's conduct with disfavor, the *Roulier* court noted: "Counsel for [the manufacturer] told the trial court that the forum non conveniens motion was delayed to allow time to conduct discovery relevant to that issue. But the form interrogatories propounded by [the manufacturer] went beyond the forum non conveniens factors, by inquiring into the substance of plaintiff's claims for medical and lost wages damages. In an analogous case, *Groom v. Health Net*[, *supra,*] 82

Cal.App.4th 1189 . . . , we discussed cases that have held that prejudice can be established when a party uses judicial discovery procedures for an unfair advantage, e.g., using discovery procedures not available in arbitration to discover plaintiff's strategy and evidence before moving to compel arbitration. [Citation.]" (*Id.* at p. 1191.)

■    Respondents suggest they were not alert to the possibility of a forum non conveniens motion until after they propounded discovery. Although appellants' complaint explicitly states the accident occurred in Mexico, respondents attempt to excuse their delay in filing their motion by asserting, as Ford does, that "Plaintiffs' complaint is utterly silent as to plaintiffs' citizenship and residency"—meaning, in Ford's view, it had no reason until receiving appellants' discovery responses to know grounds existed for claiming forum non conveniens. In support, Ford cites to the complaint at pages 30 to 70 of the appellants' appendix, omitting in its citation to the record the death certificates attached as exhibits to the complaint at pages 72 and 73 of the appendix. Respondents note that the complaint within its four corners does not mention appellants' Mexican residency and citizenship. Respondents are correct, but that is no answer to the death certificates attached as exhibits. The certificates identify as "Mexican" the nationalities of decedent Andres Esparza Hernandez and his wife, decedent Georgina Isabel Ibarra Esparza, and his parents, appellants Andres Esparza Silva and Carlota Hernandez Morales, and her parents, appellants Regino Ibarra Morin and Guadalupe Campos de Ibarra. Given the information in the complaint and its exhibits, respondents knew, or had reason to know, at the time they were served, of the possible suitability of Mexico as a forum more convenient than California for trying the case. They did nothing, however, with that knowledge for 18 months. Instead, they affirmatively moved the case to Los Angeles Superior Court, where they took extensive discovery beyond the scope of that needed to establish the basis of a motion for forum non conveniens.    ■    Noting that a forum non conveniens motion does not require extensive discovery, the *Morris* court explained the motion can succeed supported by affidavits, discovery responses, and "the undisputed general knowledge of the nature of the action" permitting the court to weigh the "the general considerations" pertinent to forum non conveniens analysis. (*Morris, supra*, 144 Cal.App.4th at p. 1462.) Here, respondents used a California court for discovery they could not have obtained in Mexico to get evidence unrelated to their forum non conveniens motion. Having availed themselves of the advantages of California courts to the prejudice of appellants, respondents cannot now be heard to say our state's courts are inconvenient.

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court to vacate its previous order and enter a new order denying respondents' motion to dismiss, and for further proceedings. Appellants to recover their costs on appeal.

Bigelow, P. J., and Flier, J., concurred.

Petitions for a rehearing were denied June 25, 2010, and the opinion was modified to read as printed above.