[Nos. B201016, B201021, B201023, B201212. Second Dist., Div. Seven. Feb. 26, 2009.]

ZHANG GUIMEI et al., Plaintiffs and Appellants, v.
GENERAL ELECTRIC CO. et al., Defendants and Respondents.

**COUNSEL**

Lieff, Cabraser, Heimann & Bernstein, Robert J. Nelson, David L. Fiol; Law Offices of Michael S. Yu and Kenneth K. Tanji for Plaintiffs and Appellants.

O'Melveny & Myers, W. Mark Wood, Wallace M. Allan, Haley M. McIntosh, Cynthia A. Merrill; Allen Matkins Leck Gamble Mallory & Natsis, A. Kristine Floyd, Julie W. Russ; Munger, Tolles & Olson, Joseph D. Lee, Joshua P. Groban and Kevin A. Goldman for Defendants and Respondents.

Fred J. Hiestand for Civil Justice Association of California as Amicus Curiae on behalf of Defendants and Respondents.

**OPINION**

**JACKSON, J.—**

## INTRODUCTION

Plaintiffs Zhang Guimei (B201016), Sri Huntati (B201021), Shi Haiyan (B201023) and Xiang Cheng (B201212) appeal from an order staying their consolidated actions on the ground of forum non conveniens. The order was made on the motion of defendants General Electric Co., Bombardier, Inc., Bombardier Aerospace Corporation and China Eastern Airlines Co., Ltd. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Parties and the Airplane Crash*

On November 21, 2004, China Eastern Yunnan Airlines (CEYA) flight No. MU5210, flying from Baotou in Inner Mongolia to Shanghai, crashed into a lake shortly after takeoff. Forty-seven passengers, six crew members and two people on the ground were killed. With the exception of one Indonesian passenger, all of the victims were Chinese citizens. All of the passengers purchased their tickets in China. All of the crew members were licensed by the General Civil Aviation Administration of China.[1]

CEYA's hub of operations and repair and maintenance facilities were located at Wu Jia Ba Airport in Kunming, Yunnan, China. The airplane involved in the crash was operated and maintained in China exclusively. In May 2005, defendant China Eastern Airlines Co., Ltd. (CEA), acquired CEYA's assets. CEA is a commercial airline incorporated in China, with its principal place of business, engineering and maintenance facilities in Shanghai, China.

The airplane was a Bombardier CRJ200 LR Regional Jet, designed, manufactured, assembled and tested in Canada by defendant Bombardier, Inc. (Bombardier). Bombardier is a Canadian corporation with its principal place of business in Montreal, Quebec, Canada. Bombardier does not conduct business in California. It sold the airplane to China Aviation Supplies Import and Export Corporation in Quebec in 2002.

Defendant Bombardier Aerospace Corporation (Bombardier Aerospace) is a Delaware corporation with its principal place of business in Richardson, Texas. It did not design, manufacture, assemble, sell or service the airplane.

---

[1] "China" in this case refers to the People's Republic of China.

The airplane was powered by two model CF34 turbojet engines designed and manufactured by defendant General Electric Co. (GE). GE is incorporated in New York and has its principal place of business in Fairfield, Connecticut. The engines were not designed, manufactured, assembled, tested or shipped in California.

B.  *The Complaints and the Forum Non Conveniens Motion*

On August 17, 2005, Huntati filed suit against GE, Bombardier, Bombardier Aerospace and CEA as the surviving spouse, and guardian ad litem of the minor child of one of the crash victims. On November 21, 2005, Cheng and other relatives of one of the crash victims filed suit against GE, Bombardier, Bombardier Aerospace and CEA on their behalf and on behalf of the decedent's minor child. Also on November 21, Guimei and other relatives of crash victims filed suit against GE, Bombardier, Bombardier Aerospace and CEA.

These three Superior Court of Los Angeles County cases were ordered related to one another and assigned to the same judge on January 31, 2006. They were ordered consolidated on February 27, 2006.

On February 24, 2006, CEA moved to dismiss, or in the alternative stay, the actions on the ground of forum non conveniens (Motion). CEA claimed California was not a convenient forum for trial of the actions, and China provided an adequate alternative forum for trial. GE, Bombardier and Bombardier Aerospace joined in the motion to dismiss.

Thereafter, on November 19, 2006, Haiyan and other relatives of crash victims filed suit against GE, Bombardier, Bombardier Aerospace and CEA. This action was consolidated with the other three on March 23, 2007. Defendants moved to dismiss, or in the alternative stay, this action as well on the ground of forum non conveniens.

As part of their Motion, CEA made a commitment that, if the Motion were granted, it would (1) not contest liability in the four actions in the Chinese courts; (2) completely compensate plaintiffs in accordance with Chinese law and not seek to enforce limitations on wrongful death damages; (3) waive any applicable statutes of limitations so long as the actions were refiled in China within six months of the dismissal or stay; and (4) be bound by and satisfy any judgment in the Chinese court following any appropriate appeals.

GE, Bombardier and Bombardier Aerospace similarly agreed they would (1) submit to personal jurisdiction in China; (2) waive any applicable statutes of limitations so long as the actions were refiled in China within six months

of the dismissal or stay; (3) accept service of process; (4) comply with discovery orders; and (5) satisfy any final judgment in the Chinese court.

While the Motion was pending, the parties attempted to negotiate a settlement. When a dispute arose as to whether the parties had an enforceable settlement agreement, plaintiffs amended their complaints to allege that CEA breached the agreement. They later dismissed these claims, however.

## C. *The Trial Court's Ruling*

The trial court granted defendants' Motion and stayed the consolidated actions for the purpose of permitting proceedings in China. It scheduled status conferences every six months in order to monitor the proceedings. The trial court's ruling was conditioned on the agreements set forth above.

The trial court explained that the first issue to be resolved was whether there was a suitable alternative forum in which plaintiffs could obtain a judgment against defendants, one in which defendants are subject to the court's jurisdiction and the cause of action is not barred by the statute of limitations. (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 752, fn. 3 [1 Cal.Rptr.2d 556, 819 P.2d 14].) Here, defendants unquestionably are subject to the jurisdiction of the Chinese courts, and they agreed to waive the statute of limitations. This makes China a suitable forum, even if California law is more favorable to plaintiffs or recovery would be more difficult in China. (*Shiley Inc. v. Superior Court* (1992) 4 Cal.App.4th 126, 133 [6 Cal.Rptr.2d 38]; *Stangvik, supra,* at pp. 753–754.)

An exception to this rule arises if the remedy provided by the alternative forum is so inadequate as to amount to no remedy at all. This exception may arise where the alternative forum is in a foreign country controlled by a totalitarian regime in which there is no independent judiciary or due process of law. (*Piper Aircraft Co. v. Reyno* (1981) 454 U.S. 235, 254 & fn. 22 [70 L.Ed.2d 419, 102 S.Ct. 252]; *Shiley Inc. v. Superior Court, supra,* 4 Cal.App.4th at pp. 133–134 & fn. 4.) The question before the court was whether the exception applies here. Plaintiffs claimed it did, and that they could not get a fair trial in China.

The trial court rejected this claim. It noted that plaintiffs "present evidence from distinguished academics providing anecdotal evidence, or evidence about the Chinese judicial system's record on issues of human rights and political dissidents, and cases involving challenges to governmental actions. Plaintiffs present evidence that CEA is a government-owned entity, the government is seeking to encourage foreign companies like Bombardier and GE to invest, the courts are under Communist Party leadership, cases are

often subject to local protectionism, trials are not public in the sense we understand openness, lower courts seek advice or instruction from a higher court without informing the parties, there is corruption among judges, and judges are often uneducated."

The trial court agreed that "[s]ome or all of these factors may be serious problems in the Chinese judicial system." It was not persuaded to the contrary by defendants' evidence "that this case is likely to be filed in Shanghai, a sophisticated jurisdiction with educated judges and numerous lawyers, China follows the rule of law, state-owned enterprises lose many civil suits in China, plaintiffs prevail in 20–40% of administrative claims against the government, litigants in Shanghai often perceive their case to properly turn on facts and law and not improper influences, and local protectionism is a problem that is less likely in Shanghai."

The trial court was not persuaded by the "general evidence" submitted by both sides. The evidence "shows a legal system in the growing stages, not a fully mature legal system endowed with judges and juries who follow the rule of law where ever it leads." But this did not establish that plaintiffs would be unlikely to get basic justice if the case were to be tried in China. Plaintiffs failed to present evidence of a personal injury or wrongful death case against a government owned or controlled entity "that has been the subject of the manipulation and interference they fear. Nor have they presented admissible evidence that they are likely to be mistreated."

The trial court acknowledged that plaintiffs presented evidence that their "lawyers were interrogated by local police officials when they interviewed prospective clients." This was "some evidence of local protectionism." But, the trial court concluded, it "pales compared to the strong evidence that Plaintiffs will receive fundamental justice in China. The best evidence is that the Chinese government investigation found CEA responsible for the crash and CEA officials have been sanctioned." For this reason, the trial court found it "highly likely that Plaintiffs will recover and the courts will not be confronted with local protectionism or Communist Party influence."

The trial court also noted that CEA had agreed not to contest liability and had already paid $2.8 million to settle claims arising from water contamination caused by the crash. There was no evidence CEA had "exerted any kind of political influence against the Plaintiffs or their representatives." There was "no evidence of any sinister conduct on the part of CEA with respect to this lawsuit or the parties thereto." The court also found no reason to suspect there would be government interference in the litigation against Bombardier, Bombardier Aerospace and GE.

The trial court then considered the second issue before it, a balancing of the private interests of the litigants against the public interest in retaining the litigation in California. It concluded that California had "little or no interest in this case. There are no witnesses or documents in California, whereas there are witnesses and evidence in China. California has no interest in requiring its courts and juries to hear a case having no nexus to it."

## DISCUSSION

### A. *Standard of Review*

Just as the trial court's determination of a forum non conveniens motion is a two-step process, review of that determination requires two separate steps. First, we determine whether substantial evidence supports the trial court's finding as to whether a suitable alternative forum exists. (See *Stangvik v. Shiley Inc., supra*, 54 Cal.3d at p. 754.) In making this determination, there is no balancing of interests or exercise of discretion. (*Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700, 710 [46 Cal.Rptr.2d 888].)

Second, we review the trial court's determination on balancing private and public interests for abuse of discretion. (*Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1464 [51 Cal.Rptr.3d 301].) We "will only interfere with a trial court's exercise of discretion where [we find] that under all the evidence, viewed most favorably in support of the trial court's action, no judge could have reasonably reached the challenged result. [Citation.] '[A]s long as there exists "a reasonable or even fairly debatable justification, under the law, for the action taken, such action will not be . . . set aside . . . ." ' [Citation.]" (*Conservatorship of Scharles* (1991) 233 Cal.App.3d 1334, 1340 [285 Cal.Rptr. 325].)

### B. *Whether China Is an Adequate Alternative Forum for Litigation of Plaintiffs' Product Liability Claims*

An alternative forum is suitable if it has jurisdiction and the action in that forum will not be barred by the statute of limitations. (*Morris v. AGFA Corp., supra*, 144 Cal.App.4th at p. 1464.) It bears emphasis that "[i]t is sufficient that the action can be brought, although not necessarily won, in the suitable alternative forum." (*Ibid.*; see *Roman v. Liberty University, Inc.* (2008) 162 Cal.App.4th 670, 683 [75 Cal.Rptr.3d 828].) That the law is less favorable to the plaintiffs in the alternative forum, or that recovery would be more difficult if not impossible, is irrelevant to the determination whether the forum is suitable unless "the alternative forum provides no remedy at all." (*Stangvik v. Shiley Inc., supra*, 54 Cal.3d at p. 764; see *Roman, supra*, at p. 683; *Boaz v. Boyle & Co., supra*, 40 Cal.App.4th at p. 710.)

The "no remedy at all" exception applies "only in 'rare circumstances,' such as where the alternative forum is a foreign country whose courts are ruled by a dictatorship, so that there is no independent judiciary or due process of law." (*Shiley Inc. v. Superior Court, supra,* 4 Cal.App.4th at pp. 133–134.) "This exception has been applied in cases where the proposed alternative forum is in a foreign country that lacks an independent judiciary. [(*Id.* at p. 134, fn. 4.)] For example, in *Rasoulzadeh v. Associated Press* (S.D.N.Y. 1983) 574 F.Supp. 854, 861, the court held that an alternative forum in Iran was not available since the courts there were administered by Iranian mullahs and the plaintiffs were likely to be shot if they returned to Iran. Similarly in *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.* (D.Del. 1978) 78 F.R.D. 445, 455, the court found that Ecuador was not a suitable forum since it did not have an independent judiciary. Courts controlled by a military junta in Chile were likewise found unsuitable. (*Canada Overseas Ores Ltd. v. Compania, etc.* (S.D.N.Y. 1982) 528 F.Supp. 1337, 1342.)" (*Chong v. Superior Court* (1997) 58 Cal.App.4th 1032, 1037 [68 Cal.Rptr.2d 427].)

However, as cases cited by plaintiffs make clear, in order to defeat a forum non conveniens motion, plaintiffs must show more than general allegations of corruption, lack of due process or other factors making an alternative forum unsuitable. For example, in *Eastman Kodak Co. v. Kavlin* (S.D.Fla. 1997) 978 F.Supp. 1078, the court dealt with the question whether corruption in Bolivian courts precluded application of forum non conveniens to allow trial of the matter in Bolivia. The court noted that generalized allegations of corruption "do[] not enjoy a particularly impressive track record." (*Id.* at p. 1084.) In the case before it, however, the plaintiffs not only presented evidence of corruption but also alleged that the defendant was "well-connected and ha[d] already used the criminal justice system to extort a commercial settlement from" one plaintiff, as well as to obtain criminal convictions of the plaintiff's employees. (*Id.* at p. 1086.) Against this evidence, the court ruled that the defendants had not met their burden of proving that Bolivia was a suitable alternative forum. (*Id.* at p. 1087.)

Similarly, in *Daventree Ltd. v. Republic of Azerbaijan* (S.D.N.Y. 2004) 349 F.Supp.2d 736, the court found that "[i]n contrast with general allegations of corruption, the possibility that the Sovereign defendants could dictate the outcome of this dispute through their control over Azeri courts would effectively foreclose the plaintiffs' right to pursue their claims and render the Azerbaijan courts an inadequate forum." (*Id.* at p. 756.)

With respect to Chinese courts, plaintiffs claim that "there is increasing recognition that Chinese courts are sub-par." The cases they cite do not support their claim, much less a claim that the "no remedy at all" exception applies.

In *S & D Trading Academy, LLC v. AAFIS, Inc.* (S.D.Tex. 2007) 494 F.Supp.2d 558, the court found that China was a suitable alternative forum, in that Chinese law recognized the plaintiff's causes of action, and the defendant agreed to submit to the jurisdiction of the Chinese court. (*Id.* at p. 571.) The court did refer to "the current nationwide concern about China's lackadaisical enforcement of intellectual property rights," but this was in the context of the balancing of public and private interests, the court noting that this concern "heightens local interest in cases in which international corporations are accused of wrongfully using and profiting from U.S. intellectual property." (*Id.* at p. 573, fn. 13.)

In *BP Chemicals Limited v. Jiangsu Sopo Corp.* (E.D.Mo. 2006) 429 F.Supp.2d 1179, the court found China to be an inadequate forum. However, this finding, too, was based upon a balancing of public and private interests, particularly the plaintiff's choice of forum. Additionally, the court found the defendant failed to meet its burden of proving " 'all elements necessary for the court to dismiss a claim based on *forum non conveniens.*' " (*Id.* at p. 1183.)

In other cases, China has been accepted as a suitable alternative forum. In *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.* (2007) 549 U.S. 422 [167 L.Ed.2d 15, 127 S.Ct. 1184], the court found the litigation should be dismissed on forum non conveniens grounds based on the pendency of litigation in China. (*Id.* at p. 435.) In *China Tire Holdings v. Goodyear Tire and Rubber* (N.D. Ohio 2000) 91 F.Supp.2d 1106, the court gave collateral estoppel effect to a prior holding that the plaintiff's claims most appropriately would be adjudicated in China. (*Id.* at pp. 1110–1111.) In *In re Compania Naviera Joanna S.A.* (D.S.C. 2007) 531 F.Supp.2d 680, the court noted that "[w]hile [a description of the prospects for pursuing litigation in China] paints an unrosy picture for claimants, it does not suggest that they are left without a remedy." (*Id.* at p. 687.)

This brings us to a consideration of the evidence presented in the instant case on whether China is a suitable alternative forum. As stated above, the question is whether substantial evidence supports the trial court's finding that China is a suitable alternative forum. (See *Stangvik v. Shiley Inc., supra,* 54 Cal.3d at p. 754.) Substantial evidence is evidence of ponderable legal significance. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873 [197 Cal.Rptr. 925].)

The trial court, as trier of fact, has the duty to weigh and interpret the evidence and draw reasonable inferences therefrom. (*In re Cheryl E.* (1984) 161 Cal.App.3d 587, 598 [207 Cal.Rptr. 728].) We cannot reweigh the evidence or draw contrary inferences. (*2,022 Ranch v. Superior Court* (2003)

113 Cal.App.4th 1377, 1387 [7 Cal.Rptr.3d 197]; *In re Cheryl E., supra,* at p. 598.) We presume the trial court found every fact and drew every reasonable inference necessary to support its determination. (*Provencio v. WMA Securities, Inc.* (2005) 125 Cal.App.4th 1028, 1031 [23 Cal.Rptr.3d 524].) We cannot reject evidence accepted by the trial court as true unless it is physically impossible or its falsity is obvious without resort to inference or deduction. (*DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4th 150, 195 [62 Cal.Rptr.3d 722].)

In support of their Motion, defendants presented the declarations of Randall Peerenboom (Peerenboom) and Jacques deLisle (deLisle). Peerenboom is a professor of law at University of California, Los Angeles, where he has taught on Chinese law. He has written extensively on Chinese law, has worked with Chinese law firms and has been an expert witness on Chinese law.

Peerenboom opined that "the Chinese courts available to plaintiffs provide an adequate forum in this case." This opinion was based, in part, on Chinese law which provides procedures for multiparty commercial litigation and a right to appeal. It also was based on plaintiffs' ability to choose the venue for the litigation. The choices included Shanghai, where CEA's headquarters were located, and whose intermediate court is experienced in handling cases such as the instant one.

Peerenboom disagreed with plaintiffs' "experts attempt to put the entire Chinese legal system on trial." He pointed out that most of the problems with the Chinese legal system arose in politically sensitive cases as opposed to commercial cases such as the instant one. Additionally, evidence showed corruption in Chinese courts was decreasing and was less than that of courts in other countries with similar levels of per capita income.

Peerenboom also noted substantial monetary awards to airplane crash victims in another case, no basis for concern about local protectionism in Shanghai courts, and the availability of counsel in China able to represent plaintiffs. He concluded that "[t]he problems and issues discussed at length by the Plaintiffs and their experts are either not applicable in this case or not a bar to a fair trial."

DeLisle is a professor at the University of Pennsylvania School of Law, who teaches on Chinese law, has authored numerous publications and has been an expert witness on Chinese law. DeLisle opined that the declarations of plaintiffs' experts "paint a picture of the Chinese judiciary and legal system that is far darker than the relevant reality warrants and rely on examples and interpretations that are misleading or potentially so." To the

contrary, "in a case with the characteristics of this case, brought in the Chinese courts in which plaintiffs could bring this case, plaintiffs would have adequate legal remedies."

In particular, deLisle pointed to the increase in foreign investment in China, which has created a need for a sophisticated, well-functioning legal system. China now has many large law firms as well as branch offices of foreign law firms. DeLisle noted that while practice in China "has frustrations and disappointments, it is not consistent with plaintiffs' picture of a deeply flawed legal system irreconcilable with the professional norms and experiences of lawyers" trained in the United States and other Western countries.

Like Peerenboom, deLisle pointed out that Shanghai boasts a legal system superior to that in other areas of China. It has a high percentage of large and foreign law firms and lawyers educated at elite universities, as well as judges who are "far better and more professionally educated than their counterparts in most of China." Additionally, courts in Shanghai have experience handling cases involving multiple plaintiffs.

According to deLisle, "[l]ocal protectionism and related phenomena are significant problems in China, but they are not nearly as pervasive as plaintiffs imagine." For a number of reasons, they are not a problem in Shanghai. The courts there serve the entire province and are more professional than in other areas. Additionally, CEA is not a local company but is owned by a holding company which is a central body which holds a vast portfolio of state-owned interests. Further, "defendants are not major components of the local economy—a key factor in local protectionism."

DeLisle also noted that "China long ago abandoned the idea that state-owned enterprises (much less partly state-owned ones) are immune from legal liability in Chinese (or foreign) courts. State-owned or largely state-owned enterprises lose many civil lawsuits in China." The Chinese government "increasingly has emphasized the need for the law and courts to protect consumers and ordinary Chinese against harms caused by illegal, careless or otherwise rights-infringing behavior by enterprises."

Plaintiffs go to great lengths to attack the credibility of Peerenboom and deLisle as compared to that of their own experts, whose declarations painted a completely different picture of the legal system in China. However, a determination as to whether substantial evidence supports the trial court's findings "does not require that the evidence appear to the appellate court to outweigh the contrary showing." (*People v. Javier A.* (1985) 38 Cal.3d 811, 819 [215 Cal.Rptr. 242, 700 P.2d 1244]; see *Department of Parks & Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813, 830–831 [284 Cal.Rptr. 839].)

■ Plaintiffs also argue that the trial court improperly overlooked the Chinese legal system's inability to adjudicate complex product liability claims. In support of their argument, they rely on the declaration of one of their experts. However, the testimony of deLisle and Peerenboom supports a conclusion that Chinese courts—at least in Shanghai, where plaintiffs may bring their action—are in fact capable of adjudicating complex product liability claims. The judges and attorneys are well educated and sophisticated, and they have experience in complex, multiparty litigation, including litigation involving airplane crashes.

As stated above, it is the trial court, as trier of fact, which must weigh and interpret the evidence and draw reasonable inferences therefrom. (*In re Cheryl E., supra*, 161 Cal.App.3d at p. 598.) We cannot reweigh the evidence or draw contrary inferences. (*2,022 Ranch v. Superior Court, supra*, 113 Cal.App.4th at p. 1387; *In re Cheryl E., supra*, at p. 598.) Neither can we reject evidence accepted by the trial court as true unless it is physically impossible or its falsity is obvious without resort to inference or deduction. (*Watson v. Department of Rehabilitation* (1989) 212 Cal.App.3d 1271, 1293 [261 Cal.Rptr. 204].) The evidence of Peerenboom and deLisle does not fall into this category. We thus must accept it as substantial evidence in support of the trial court's finding that China, indeed, provides a suitable alternative forum for this litigation.

C.  *Whether the Trial Court Abused Its Discretion in Finding Trial of Plaintiffs' Claims in California Would Be So Inconvenient as to Justify Granting the Motion*

■ Once it is determined that there is a suitable alternative forum, the trial court must weigh the private interests of the parties against the interests of the public in retaining the action in California. (*Stangvik v. Shiley Inc., supra*, 54 Cal.3d at p. 751; *Morris v. AGFA Corp., supra*, 144 Cal.App.4th at p. 1463.) "The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses. The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation. [Citations.]" (*Stangvik, supra*, at p. 751; see *Morris, supra*, at pp. 1463–1464.) The trial court has great flexibility in weighing these factors; no one factor is determinative. (*Stangvik, supra*, at p. 753; *Morris, supra*, at p. 1465.)

We conclude the trial court did not abuse its discretion in determining that California is a seriously inconvenient forum. The trial court found California has "little or no interest in this case. There are no witnesses or documents in California, whereas there are witnesses and evidence in China. California has no interest in requiring its courts and juries to hear a case having no nexus to it." (See, e.g., *China Tire Holdings v. Goodyear Tire and Rubber, supra,* 91 F.Supp.2d at pp. 1110–1111.)

These "private interest factors support the conclusion that China is the more convenient forum. The events that are subject to this action occurred exclusively in China. It is thus reasonable to assume that there will be more Chinese witnesses than United States witnesses (if any). Moreover, the relevant evidence is much more likely to be found in China. Indeed, Chinese [aviation] authorities have already conducted an investigation into the incident; the evidence they gathered is in China, Chinese courts would be able to compel the attendance of witnesses located there, it will be less burdensome for those witnesses to attend proceedings in China. . . . To the extent proximity to the location of the collision will assist the finder-of-fact, that factor naturally supports a conclusion that China is more convenient. Although . . . a number of witnesses and other evidence is located in countries other than China, as between the United States and China, the latter has substantially better access to the sources of proof." (*In re Compania Naviera Joanna S.A., supra,* 531 F.Supp.2d at pp. 688–689; see also *Stangvik v. Shiley Inc., supra,* 54 Cal.3d at pp. 756–757.)

■　Plaintiffs argue that most or all of Bombardier, Bombardier Aerospace and GE's documents relating to the plane and engines involved in the crash are located in the United States or Canada. "The fact that some evidence concerning the aircraft's design and manufacture may be located elsewhere in the United States does not make [California] a convenient forum." (*Alma Torreblanca de Aguilar v. Boeing Co.* (E.D.Tex. 1992) 806 F.Supp. 139, 144.)

More importantly, all defendants have committed to participating in trial of the action in China, including submitting to the court's jurisdiction, complying with discovery and paying any judgments against them. These factors, too, weigh in favor of trying the case in China.

■　That plaintiffs selected California as the forum state is of little consequence. While a resident plaintiff's choice of California as the forum state is afforded substantial weight, a nonresident plaintiff's choice is given less deference. (*Chong v. Superior Court, supra,* 58 Cal.App.4th at p. 1038.) "Although [plaintiffs] claim that they are motivated by the convenience of the place of trial, this court, like others before it, recognizes that an additional motivating factor—and perhaps the major one—relates to the circumstance

that trial in California will enhance the possibility of substantial recovery." (*Stangvik v. Shiley Inc., supra,* 54 Cal.3d at p. 761.) There can be no other reason; none of plaintiffs has any connection to California, and defendants' connections are greatly attenuated. To the extent the trial court gave little deference to plaintiffs' choice of California as the forum state, it did not abuse its discretion. (*Conservatorship of Scharles, supra,* 233 Cal.App.3d at p. 1340.)

Finally, " '[i]t seems unduly burdensome for California residents to be expected to serve as jurors on [what promises to be a long and complicated] case having so little to do with California.' " (*Morris v. AGFA Corp., supra,* 144 Cal.App.4th at p. 1467.) Additionally, inasmuch as defendants are not California corporations, California has little interest in keeping the litigation in this state to deter future wrongful conduct. (*Stangvik v. Shiley Inc., supra,* 54 Cal.3d at p. 753, fn. 4; *Morris, supra,* at p. 1465.) Therefore, public interest factors as well favor trial of the matter in China.

Plaintiffs further contend that the trial court's decision "fails to offer a reasoned basis for finding that trial of plaintiffs' claims in the United States would be so inconvenient as to justify dismissal." First, the trial court did not dismiss the instant actions; it stayed them. In the unlikely event that China proves to be an unsuitable alternative forum, the action here may proceed.

Second, we believe the trial court's decision does offer a reasoned basis for finding that trial of the action in California—which is home to none of the parties and where the airplane crash did not occur—would be so inconvenient as to justify staying the action so that it can proceed in China—where the airplane crash occurred, which is home to the vast majority of plaintiffs and one of the defendants, and where all defendants have agreed to be bound by the judgment of the court.

D. *Whether the Trial Court Abused Its Discretion in Refusing to Consider Evidence in Plaintiffs' Surreply Papers*

In response to defendants' filing of deLisle's declaration in their reply papers, plaintiffs filed a surreply brief including deposition excerpts and a supplementary declaration by Junbo Hao (Hao). In its tentative decision, the trial court indicated that it did not consider either of these documents.

At the hearing on the matter, however, the trial court was reminded that it had authorized the filing of the surreply brief, although not the filing of the Hao declaration. The court acknowledged that plaintiffs were entitled to have the surreply brief reconsidered, and it would do so.

Plaintiffs acknowledge that consideration of both the surreply brief and the Hao declaration were within the discretion of the trial court. (*Alliant Ins.*

*Services, Inc. v. Gaddy* (2008) 159 Cal.App.4th 1292, 1308 [72 Cal.Rptr.3d 259].) Plaintiffs fail to demonstrate that the trial court abused its discretion in refusing to consider the Hao declaration, much less that they were prejudiced by that refusal. They thus have failed to meet their burden of showing reversible error. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 [224 Cal.Rptr. 664, 715 P.2d 624]; *Robbins v. Los Angeles Unified School Dist.* (1992) 3 Cal.App.4th 313, 318 [4 Cal.Rptr.2d 649]; see also Evid. Code, § 354.)

E. *Whether the Trial Court's Ruling Had an Impermissible Substantive Impact on Plaintiffs' Rights*

Plaintiffs' contention has three parts. First, they argue that "[b]y sweeping aside concerns about the independence and competence of the Chinese courts, the Court below left plaintiffs with no reasonable assurance that their damages claims will be adjudicated on the merits, rather than based on the potentially vituperative whims of politically connected China Eastern officials." As discussed above, substantial evidence supports the trial court's finding that China is a suitable alternative forum, i.e., that they will not be deprived of their remedy by corruption or protectionism in the Chinese judicial system.

Plaintiffs also seem to be suggesting that by granting the Motion, the trial court deprived them of the right to pursue the product liability claims against Bombardier, Bombardier Aerospace and GE. These three defendants, as well as CEA, stipulated that they would submit to the jurisdiction of the Chinese court and pay any ensuing judgments against them. We fail to see any merit to plaintiffs' claim.

Finally, plaintiffs present a somewhat unintelligible argument regarding dismissal of the instant actions. The trial court did not dismiss the actions; it stayed them, with status conferences scheduled every six months to monitor the proceedings in China. Again, plaintiffs' argument is meritless.

By staying the actions, the trial court retained the power to verify both that plaintiffs are able to bring their actions in China and that defendants live up to their stipulations. That is, the trial court can monitor the progress of the litigation in China at its scheduled six-month status conferences, to ensure that the Chinese courts accept jurisdiction by permitting plaintiffs to file and present their claims, and that defendants submit to the jurisdiction of the Chinese courts, do nothing to thwart plaintiffs' ability to try their cases and satisfy any final judgments against them in the Chinese court. If for any reason defendants do not act in accordance with their stipulations, the trial court can revisit the question whether to try the actions.

We note that the trial court's periodic review of the proceedings in China is limited to the procedural aspects of the proceedings, not their merits.

Additionally, if it is plaintiffs rather than defendants who thwart the proceedings, the trial court need not continue to stay the action but may dismiss it.

### F. Whether We Should Consider Facts Arising After the Filing of This Appeal

In their reply brief, plaintiffs contend that we are "required to take note of the material change in factual circumstances since this appeal was taken." These "facts" are contained in documents submitted in support of and opposition to plaintiffs' motions to lift the stay of proceedings in the trial court.

To the extent plaintiffs are asking us to take judicial notice of these facts, we cannot do so. Under Evidence Code section 452, subdivision (h), we may take judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." Plaintiffs cite no authority suggesting that declarations submitted in support of and opposition to a motion fall into this category.

To the extent plaintiffs are requesting that we take additional evidence on appeal, we decline to do so. Paintiffs appear to be attempting an end run around review of the trial court orders denying their motion to lift the stay.

The cases on which plaintiffs rely in support of their contention are inapposite. The California cases stand for the proposition that we can consider new points—not facts—raised for the first time in a reply brief. (E.g., *Greenlining Institute v. Public Utilities Com.* (2002) 103 Cal.App.4th 1324, 1329, fn. 5 [127 Cal.Rptr.2d 736].) Cases from other jurisdictions are not controlling on matters of procedure. (See 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, §§ 504, 507, pp. 566–568, 570–571.) And even the cases from other jurisdictions note that " 'the preferred procedure' " is to allow the trial court to consider the new facts in the first instance. (*Concerned Citizens of Vicksburg v. Sills* (5th Cir. 1978) 567 F.2d 646, 650; see also *Sampson v. Johnson* (D.C. 2004) 846 A.2d 278, 288–289.)[2]

---

[2] We deny plaintiffs' request to take judicial notice of a United States Department of State Country Report on Human Rights Practices pertaining to China. We may not take judicial notice of the matters contained within the report, and the mere existence of the report is irrelevant to our resolution of the issues on appeal. (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063–1064 [31 Cal.Rptr.2d 358, 875 P.2d 73], disapproved on another ground in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276 [63 Cal.Rptr.3d 418, 163 P.3d 106].)

## DISPOSITION

The order is affirmed. Defendants are to recover costs on appeal.

Woods, Acting P. J., and Zelon, J., concurred.