Filed 5/17/21  Sharkh v. Continentale Krankenversicherung A.G. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| MIRIAM ABU SHARKH et al., | B303219 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. SC127208) |
| v. | |
| CONTINENTALE KRANKENVERSICHERUNG A.G. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gerald Rosenberg and Marc D. Gross, Judges.  Reversed and remanded.

McKennon Law Group, Robert J. McKennon and Andrea Soliz for Plaintiffs and Appellants.

Wilson Elser Moskowitz Edelman & Dicker, Gary S. Pancer and Adam Le Berthon for Defendant and Respondent Continentale Krankenversicherung a.G.

Daniels, Fine, Israel, Schonbuch & Lebovitz and Mark R. Israel for Defendant and Respondent Global Medical Management, Inc.

_____

Miriam Abu Sharkh, both in her individual capacity and as guardian ad litem for her minor sons, LM Abu Sharkh Holfeld and LV Abu Sharkh Holfeld, appeals from the judgment of dismissal entered after the trial court granted the motion to dismiss under the doctrine of forum non conveniens filed by defendant Continentale Krankenversicherung a.G. and joined by Global Medical Management, Inc. (GMMI). We reverse and remand for the trial court to reconsider the motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Parties and the Insurance Policy*

Continentale is a German insurance company with its principal place of business in Dortmund, Germany. Continentale sells comprehensive health and long term care insurance directly to individuals in Germany and through group policies in partnership with organizations in Germany. In 1992 Continentale contracted with the German Academic Exchange Service (Deutscher Akademischer Austauschdienst e.V. or DAAD) to provide health insurance to individual members of DAAD. The contract has been renewed annually since 1992.

DAAD, headquartered in Bonn, Germany, is a consortium of German higher education institutions and their student bodies. DAAD provides scholarships and grants to students, researchers and lecturers to study and work in Germany and internationally. Pursuant to the contract between Continentale and DAAD,

2

Continentale agreed to provide health insurance to DAAD funding recipients and their immediate families while those recipients travelled, worked and studied outside Germany. DAAD collects premium payments from its individual members and pays the policy premium to Continentale in a lump sum each month. In order to be covered under the policy an individual must be registered by DAAD with Continentale. The policy states its "area of application is countries outside of Germany, unless otherwise agreed" and the "scope of the insurance cover[age] is based on the [policy] as well as the statutory regulations of the Federal Republic of Germany."[1]

GMMI is a Texas corporation with its principal place of business in Pembroke Pines, Florida. In 2012 Continentale and GMMI entered into a contract pursuant to which GMMI would "provide medical cost containment services" for Continentale in the United States, including "medical case management," providing evidence of coverage to insureds' medical providers, processing submitted claims and paying approved medical claims.[2] According to Continentale, although GMMI issued payments for approved claims in the United States, all coverage decisions were made by Continentale employees in Germany.

---

[1] The policy was issued in German. The record contains an English language translation of the policy prepared by a translator in Cologne, Germany in 2017 and submitted by Continentale in support of its motion to dismiss.

[2] In exchange for services provided Continentale agreed to pay GMMI "twenty-two percent (22%) of the amount saved or recovered on [Continentale's] behalf from medical providers, insurance companies and all third parties."

3

The contract between GMMI and Continentale was executed in both German and English.

Sharkh is a citizen of both Germany and the United States. In 2007 she took a position at Stanford University, initially as a visiting scholar with the Center of Democracy, Development and Rule of Law and later as a consulting associate professor with the Center for International Development. Because of her position at Stanford, Sharkh was eligible for health insurance through DAAD's group policy with Continentale. DAAD registered Sharkh as an insured under the group policy in October 2006 with an address in Mainz, Germany. In January 2007 Continentale was provided with an updated address for Sharkh in Palo Alto, California. It is undisputed that Sharkh was a resident of California continuously from 2007 to mid-2016.

LM was born in California in 2011. LV was born in California in 2013. Upon his birth each child was registered with Continentale as an insured under the DAAD group policy.

2. *LM's Illness and Cancellation of the Policy*

When he was five months old, LM contracted measles. As a result he developed a rare, progressive and usually terminal brain disorder that includes inflammation and irritation in the brain. By the time he was four years old, LM's condition had deteriorated significantly, requiring him to be hospitalized for almost six months during late 2014 and early 2015. LM did not have control over his extremities; he suffered from frequent seizures, was fed through a tube in his stomach and often required supplemental oxygen.

In March 2015 LM's doctors informed Sharkh that LM likely had only three months to live. LM's doctors recommended he be discharged to the family home with 24-hour nursing and

hospice care. Continentale agreed to the treatment plan. According to the first amended complaint, in July 2015, as LM lived beyond his three-month life expectancy, Continentale and GMMI began to deny or delay payment of claims for reasons that had never previously been raised and in some cases denied coverage for preapproved claims or claims substantially similar to those that had been previously paid.

In January 2016 Sharkh received an email from GMMI inquiring about LM's current life expectancy. When the family's physician replied that LM had already outlived his anticipated life expectancy, GMMI responded the answer was not sufficient. In February 2016 Continentale and GMMI began refusing to pay for LM's nursing care.

Sharkh contacted Continentale in an attempt to resolve the claim denials but was told GMMI handled claims in the United States and Continentale did not have access to information necessary to explain the claims decisions. Sharkh then reached out to GMMI and was told she would be contacted by the GMMI employee who handled her claims. Sharkh never received a response.

On April 29, 2016 Sharkh received an email from Continentale stating it was terminating the family's coverage under the policy. The email stated Continentale had signed an agreement with DAAD to terminate coverage without prior notice and cited as a legal basis a provision of the German Civil Code.[3] The email also stated, "In particular, the duration and

---

[3] According to the first amended complaint the cited section of the German Civil Code provides that a contract may be terminated for "a compelling reason" but in certain circumstances termination may require notice and opportunity to cure.

5

multiplicity of the fraudulent actions as well as the high damages incurred in this context are decisive."[4]  The email provided no information regarding the fraudulent actions Sharkh was alleged to have taken.

### 3. *The First Amended Complaint*

On March 9, 2017 Sharkh filed a complaint and on November 6, 2017 a first amended complaint against Continentale and GMMI asserting claims for breach of contract and breach of the implied covenant of good faith and fair dealing against both defendants and a claim for negligence against GMMI only.  The first amended complaint alleged Continentale and GMMI had breached the policy by unreasonably delaying payment or failing to pay properly submitted claims for care that was medically necessary and covered under the terms of the policy.  It further alleged Continentale and GMMI breached the implied covenant by, among other things, asserting false, baseless reasons for denying claims; failing to search for evidence supporting payment of claims; failing to provide prompt and reasonable explanations for claim denials; and unreasonably and in bad faith terminating coverage.  The cause of action for breach of the implied covenant also included multiple references to California Insurance Code sections and California Regulations the defendants were alleged to have violated.  The negligence claim alleged GMMI had breached the duty of care imposed by California law on administrators of group benefits insurance policies.

---

[4]     The email was written in German, and a translation was provided in the first amended complaint.

The first amended complaint stated that, after Continentale's cancellation of the policy, the family was no longer able to afford medical care for LM in the United States and had relocated to Peru in May 2016. As a result, for purposes of diversity jurisdiction, "Plaintiffs currently permanently reside outside of the United States" and could not bring their claims in federal court.

4. *Continentale's Motion to Quash Service or Dismiss*

On January 8, 2018 Continentale moved to quash the service of summons for lack of personal jurisdiction or, in the alternative, to dismiss the first amended complaint on the ground of forum non conveniens. Continentale argued it was not subject to general jurisdiction in California because it was a German corporation and it was not subject to specific jurisdiction because it did not have sufficient minimum contacts with California. Specifically, Continentale argued it did not receive premium payments from Sharkh in California, instead receiving payments from DAAD, and it was not licensed or authorized to do business in California. As to forum non conveniens Continentale argued the action could be litigated more efficiently and economically in Germany because the majority of witnesses and documents were located in Germany, including employees of Continentale and DAAD who had knowledge of the insurance policy and claims. Continentale also argued German law applied to the dispute pursuant to the policy provision stating the scope of coverage was based on German statutory regulations. Further, it argued, California had no interest in the dispute because Sharkh no longer resided here. The motion included the declaration of Manfred Hoffman, Continentale's department manager of special health insurance contracts. Hoffman's declaration, executed in

7

English, stated Continentale's employees reside in Germany and "primarily speak German, not English."

Sharkh opposed the motion, arguing, as to forum non conveniens, that Germany was not a suitable available forum because plaintiffs in Germany must pay attorney fees in advance, do not have the option of hiring an attorney on a contingency basis and could be responsible for the opposing parties' attorney fees if the litigation were unsuccessful. Such costs would be prohibitive to Sharkh pursuing legal action in Germany. Even if Germany were a suitable available forum, Sharkh argued, it would not be more convenient to litigate the case there because the majority of witnesses reside in California, including doctors and nurses who participated in LM's medical care. Sharkh submitted a declaration stating she and her sons were residents of California at the time of the alleged injuries and she left California only because she could no longer afford healthcare for LM after Continentale's cancellation of the policy. She stated she had initially moved to Peru and, as of March 2018, was living in Spain. Sharkh also recounted having received correspondence from Continentale while living in California. The opposition also included the declaration of a German attorney who explained the purported choice of law provision cited by Continentale referred only to the "scope of insurance" provided and did not dictate German law would apply to any dispute arising under the policy.

In reply papers Continentale submitted the declaration of its own German attorney disputing the points raised in Sharkh's opposition but conceding the policy language was "not a classical choice of law provision," however, "it can be used to determine the law applicable to disputes arising under the DAAD policy."

8

Counsel for GMMI also submitted a declaration stating GMMI did not object to jurisdiction or litigation in Germany.

In April 2018 the trial court denied the motion to quash service for lack of personal jurisdiction, finding Continentale had the minimum contacts necessary to confer specific jurisdiction: "By extending the insurance to Plaintiffs knowing they resided in California, [Continentale] purposefully availed itself of California's benefits by creating a continuing obligation to its California insureds and the claims filed by the Plaintiffs that were reviewed and approved by Defendant Continentale." The court further stated California had an important interest in providing redress to California residents whose insurance claims were unreasonably denied. The court did not take up the issue of forum non conveniens, denying that part of the motion without prejudice.[5]

5. *Continentale's Renewed Motion To Dismiss or Stay for Forum Non Conveniens*

On August 27, 2018 Continentale filed a renewed motion to dismiss or stay the action based on forum non conveniens.[6] The motion reiterated the points raised in its prior motion, focusing on its argument the dispute had no nexus to California because the Sharkh family no longer resided here and German law would apply to the dispute. The motion included a second declaration

---

[5] Continentale filed a petition for writ of mandate seeking review of the trial court's jurisdiction findings, which we denied. (*Continentale Krankenversicherung a.G. v. Superior Court* (May 9, 2018, B289817).)

[6] GMMI joined the motion by means of a declaration from its counsel.

from Continentale's German attorney discussing the difficulty of obtaining pretrial discovery from Germany and the inability to compel the attendance of witnesses from Germany and stating that, under German choice of law principles, German law would apply to this dispute. Hoffman also submitted a second declaration explaining Continentale had already produced 12,000 pages in discovery, most of which were written in German.

In opposition Sharkh again argued the majority of the material witnesses were in California. In addition to the medical personnel who could testify regarding the necessity of LM's treatment, Sharkh explained the witnesses who could rebut Continentale's claims of alleged fraud on her part were also in California. Sharkh had learned through discovery that Continentale had terminated coverage, at least in part, based on an April 2016 memorandum from GMMI (written in English), which in turn had been based on information from an anonymous caller, alleging that Sharkh had established a scheme to "recoup" $40 for every hour of nursing care billed by a particular agency and paid by Continentale. That nursing agency and its employees, who could testify regarding the falsity of the allegations, were in California. Sharkh also stated in a declaration that LM had passed away in June 2018 and she intended to return to California with LV. In a supplemental opposition filed three weeks later, Sharkh stated she and LV had returned to California indefinitely and had no intention of returning to Germany.

Continentale filed a "supplemental reply" containing information it had recently discovered concerning Sharkh's residency since 2016 and suggesting the family's recent return to California was mere forum shopping. Through documents filed in

Sharkh's family law proceeding in northern California and through conversations with Sharkh's former father-in-law, Continentale had learned Sharkh had been living in Germany since May 2017. Further, Sharkh had sought to transfer her family law case to Germany in March 2017, citing the convenience of a German forum for the family's child support and custody issues.

On October 10, 2018, one day prior to the hearing, Sharkh filed a declaration in response to Continentale's supplemental reply explaining she had left Peru in May 2017 because LM had developed pneumonia and needed to undergo a medical procedure that could not be provided in Peru. Sharkh was able to arrange an ambulance flight to transport LM, but it would take them only to the United States or Germany. Because she had no way of paying for medical care in the United States, she chose to take LM to Germany, where the family stayed for 10 months before relocating to Spain in March 2018. Sharkh again claimed she had always intended to return to California and planned to stay here indefinitely. She stated her tax returns showed her address in California and she still had a valid California driver's license.

The trial court granted Continentale and GMMI's motion on October 11, 2018. In its brief tentative ruling the court found Germany was an adequate alternative forum and stated, "For Plaintiff, who resides in Spain, litigation in Germany is not any less convenient than litigation in California. [¶] . . . All parties are outside of California. California has no interest in providing a forum for disputes between nonresidents involving claims about which California has no interest." During argument Sharkh's counsel reiterated that Sharkh had moved back to California in September 2018. The court acknowledged this and stated the

tentative had been written prior to receiving that information in the supplemental declarations. Sharkh's counsel also acknowledged Sharkh had lived in Germany for a short time in 2017 and 2018 and "we did not disclose that to defense counsel." The court responded, "But that's very important." The court later commented, "She's been moving around. It doesn't make sense." Without providing any additional explanation or analysis, the trial court adopted its tentative ruling and granted the motion to dismiss.[7]

6. *Sharkh's Motion for Reconsideration*

On November 21, 2018 Sharkh filed a motion for reconsideration pursuant to Code of Civil Procedure section 1008, arguing her October 10, 2018 declaration had not been considered by the court and therefore contained new facts. In addition, Sharkh argued a November 8, 2018 family court order prohibiting LV from leaving northern California constituted new information that was unavailable at the time of the court's ruling. In a declaration in support of the motion, Sharkh stated she had left California for Spain on November 6, 2018 to make arrangements for LM's burial.[8] Sharkh and LV initially intended to be in Spain for two weeks, but extended their stay due to the

---

[7] The motion was granted by Judge Gerald Rosenberg, who retired in early 2019, at which point Judge Marc D. Gross presided over this matter.

[8] Although LM had passed away in Spain in June 2018, he had not yet been laid to rest because his brain had been donated to a Spanish hospital for research into the rare condition from which he suffered.

ongoing wildfires in northern California. Sharkh stated she planned to return to California in late December 2018.

Due to a series of continuances Continentale's opposition to the motion was not filed until August 2019. Continentale argued Sharkh had failed to present any new or different facts that could not have been submitted prior to the court's ruling. Further, Continentale noted Sharkh had failed to return to California in the nine months since filing the motion for reconsideration, but instead remained in Spain.

In a declaration in support of her reply, Sharkh explained she had intended to return to California at the end of 2018, but she discovered LV's passport had expired. Due to difficulty in getting consent from LV's father, she was unable to obtain the renewed passport until April 2019, at which time she decided to have LV finish the school year in Spain. She then planned to return to California in August 2019, but both she and LV had ear infections and were advised to avoid air travel. As of the date of her declaration, August 13, 2019, Sharkh stated she had leased a home in northern California and intended to return here within a week.

The motion for reconsideration was denied on August 20, 2019. An amended judgment of dismissal was entered on November 1, 2019.

## DISCUSSION

1. *Governing Law and Standard of Review*

"Forum non conveniens is an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly

13

tried elsewhere." (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751 (*Stangvik*).) The doctrine is codified in Code of Civil Procedure section 410.30, subdivision (a), which provides, "When a court upon a motion of a party . . . finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."

In determining whether to grant a motion based on forum non conveniens, a court must first determine whether the alternative forum is a "'suitable' place for trial." (*Stangvik, supra*, 54 Cal.3d at p. 751.) If a suitable alternative forum exists, "the next step is to consider the private interests of the litigants and the interests of the public" to determine whether the balance lies in favor of retaining the action in California or requiring that it be prosecuted in the alternative forum. (*Ibid.*)

The first question—whether a suitable alternative forum exists—involves a "nondiscretionary determination" whether the defendant is subject to jurisdiction in the alternative forum and, if so, whether the plaintiff's cause of action would be barred in the alternate forum by a statute of limitations that would not operate to bar the suit in California. (*Chong v. Superior Court* (1997) 58 Cal.App.4th 1032, 1036 (*Chong*); accord, *Guimei v. General Electric Co.* (2009) 172 Cal.App.4th 689, 696 (*Guimei*).) If either of those factors would preclude a hearing on the merits, the alternative forum is not suitable; and the motion to dismiss or stay is properly denied no matter how inappropriate the forum may be. (*Chong*, at p. 1037 [forum is suitable only "if there is jurisdiction and no statute of limitations bar to hearing the case on the merits"]; see *Stangvik, supra*, 54 Cal.3d at p. 752, fn. 3 ["question of a suitable alternative forum depends not on the

14

factors relevant to the convenience of the parties and the interests of the public, but on whether an action may be commenced in the alternative jurisdiction and a valid judgment obtained there against the defendant"]; *American Cemwood Corp. v. American Home Assurance Co.* (2001) 87 Cal.App.4th 431, 435.) A forum is suitable if the action can be brought there, even if it cannot necessarily be won there. (*Chong*, at pp. 1036-1037; *Guimei*, at p. 696.)

Only if a suitable forum exists does the court proceed to the next step—balancing "the private interests of the litigants and the interests of the public in retaining the action for trial in California"—to determine whether the action should be retained in California or prosecuted in the alternative forum. (*Stangvik, supra*, 54 Cal.3d at p. 751.) "The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses. The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation." (*Ibid*.) This analysis requires a "weighing and balancing." (*National Football League v. Fireman's Fund Ins. Co.* (2013) 216 Cal.App.4th 902, 918.) "A case-by-case examination of the parties, their dispute and the relationship of each to the state of California is the heart of the required analysis." (*Id*. at p. 921.) "The private and public interest factors must be applied flexibly,

without giving undue emphasis to any one element."  (*Stangvik,* at p. 753; accord, *Guimei, supra,* 172 Cal.App.4th at p. 701 ["no one factor is determinative"].)

The trial court's determination on the existence of a suitable alternate forum, when based on undisputed facts, is a legal question subject to de novo review.  (*Guimei, supra,* 172 Cal.App.4th at p. 696; *Roulier v. Cannondale* (2002) 101 Cal.App.4th 1180, 1186.)  The trial court's balancing of the public and private interests, in contrast, is a highly discretionary evaluation that is accorded "substantial deference" on appeal and is subject to reversal only for abuse of discretion.  (*Chong, supra,* 58 Cal.App.4th at p. 1037; *Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1464.)  We will interfere with a trial court's exercise of that discretion only "'where [we find] that under all the evidence, viewed most favorably in support of the trial court's action, no judge could have reasonably reached the challenged result.'"  (*Guimei,* at p. 696.)

2. *Germany Is a Suitable Alternative Forum*

Sharkh does not challenge the trial court's determination that Continentale and GMMI would be subject to jurisdiction in Germany on the claims alleged in this case.  Continentale is a German company doing business in Germany, and GMMI has consented to German jurisdiction regarding Sharkh's claims.  (See *Morris v. AGFA Corp., supra,* 144 Cal.App.4th at p. 1464 [defendants' consent to jurisdiction in Texas supported finding Texas was suitable alternative forum].)  Nor does Sharkh argue Germany lacks an independent judiciary capable of rendering a just outcome based on due process of law.  (See *Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700, 711 ["a forum is suitable if . . . adjudication in the alternative forum is by an independent

judiciary applying what American courts regard, generally, as due process of law"].) As for the statute of limitations, Sharkh recognizes it did not expire until December 31, 2019—more than a year after the forum non conveniens ruling and two months after the amended judgment. In addition, Continentale's German attorney testified, citing German law, it was possible this action would toll the statute of limitations in Germany. Sharkh has not contested the accuracy of that conclusion. Accordingly, Germany is a suitable alternative forum for this action.[9] (*Chong, supra,* 58 Cal.App.4th at p. 1037.)

Sharkh's argument to the contrary relies on the assertion it would be cost-prohibitive to bring the action in Germany because she would have to pay fees and costs upon the commencement of the action, may not be able to find an attorney to work on a contingency basis, may be liable for the defendants' attorney fees if the action were unsuccessful and may not qualify for legal aid. While these factors may make litigating in Germany more expensive, less convenient and ultimately impossible for Sharkh, they do not support a finding Germany is an unsuitable alternative forum as a matter of law. (See *Guimei, supra,* 172 Cal.App.4th at p. 696 ["[t]hat the law is less favorable to the

---

[9] On remand, if the trial court is otherwise inclined to grant defendant's motion, the court should stay, rather than dismiss the action pending suit in Germany to verify Germany in fact is a suitable forum and Sharkh's claims are not barred by the governing limitations periods. (See *Investors Equity Life Holding Co. v. Schmidt* (2015) 233 Cal.App.4th 1363, 1382-1383 [because it relied on defendants' representations concerning consent to personal jurisdiction in another forum and agreement to waive a statute of limitations defense, trial court should have stayed, rather than dismissed, the California proceeding].)

plaintiffs in the alternative forum, or that recovery would be more difficult if not impossible, is irrelevant to the determination whether the forum is suitable"]; *Boaz v. Boyle & Co., supra,* 40 Cal.App.4th at p. 711 ["[t]he fact that a plaintiff will be disadvantaged by the law of that jurisdiction, or that the plaintiff will probably or even certainly lose, does not render the forum 'unsuitable' in this analysis"].)

3. *The Trial Court Abused Its Discretion by Failing To Weigh the Public and Private Interests*

The trial court's ruling relied solely on its finding that none of the parties resided in California at the time of the hearing and, therefore, California had no interest in the dispute. While location of the parties at the time of the litigation is certainly relevant to the court's analysis, it cannot be the exclusive factor on which a court relies. (See *Shiley Inc. v. Superior Court* (1992) 4 Cal.App.4th 126, 135 [trial court's reliance on choice of forum and defendant's residence in that forum without weighing other factors resulted in "'giving undue emphasis to any one element'"]; see also *Stangvik, supra,* 54 Cal.3d at p. 753, fn. 4 ["An undue emphasis on a single factor is especially threatening to a balanced analysis because some of the matters to be weighed will by their nature point to a grant or denial of the motion. For example, the jurisdiction's interest in deterring future wrongful conduct of the defendant will usually favor retention of the action if the defendant is a resident of the forum, whereas the court congestion factor will usually weigh in favor of trial in the alternate jurisdiction"].)

Further, the court's finding California had no interest in the dispute was unreasonable given the facts of this case. While the trial court found Sharkh resided in Europe at the time of the

hearing, it is undisputed Sharkh had lived continuously in California from 2007 to mid-2016 and LM and LV had lived exclusively in California from the time of their births in 2011 and 2013, respectively, until mid-2016.  Accordingly, until the time it cancelled the family's insurance coverage in 2016, Continentale performed its obligations under the policy in California by evaluating coverage for expenses incurred in California and paying claims to California medical providers.  The wrongful actions and resulting injuries alleged in the first amended complaint all took place while the family resided in California.  These circumstances give California a definite interest in the litigation, even if, like any other single factor, that interest is not outcome-determinative.  (See *Stangvik, supra,* 54 Cal.3d at p. 759, fn. 12 ["the locus of the alleged culpable conduct is a consideration in the forum non conveniens analysis"]; *Roman v. Liberty University, Inc.* (2008) 162 Cal.App.4th 670, 684 ["'with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest'"]; *Ford Motor Co. v. Insurance Co. of North America* (1995) 35 Cal.App.4th 604, 612 [California had "a significant relationship to the underlying facts" in insurance coverage action where affirmative defense "depends entirely on events that happened in California" and relevant insurance policies "pertain expressly to risks located in California"].)

California's interest in this litigation is even more pronounced given the unique nature of insurance contracts.  The Supreme Court has repeatedly recognized that "'[t]he field of insurance so greatly affects the public interest that the industry is viewed as a "quasi-public" business, in which the special relationship between the insurers and insureds requires special

considerations.'" (*Pitzer College v. Indian Harbor Ins. Co.* (2019) 8 Cal.5th 93, 106; accord, *Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 830 ["'It is no longer open to question that the business of insurance is affected with a public interest. . . . Neither the company nor a policyholder has the inviolate rights that characterize private contracts.  The contract of the policyholder is subject to the reasonable exercise of the state's police power'"].)

California's public interest in contracts of insurance includes "assuring that injuries and losses suffered in the state are afforded insurance coverage" and "encouraging fair claims handling practices and holding insurers answerable for bad faith practices." (*Southeastern Express Systems v. Southern Guaranty Ins. Co.* (1995) 34 Cal.App.4th 1, 7.)  Those interests are not vitiated simply because the insured or insurance company is not a California resident.  (See *id.* at p. 7 [finding, for personal jurisdiction purposes, California had a "significant interest" in insurance coverage litigation despite both plaintiff and defendant being residents of Georgia where injuries were sustained in California]; *People v. United National Life Ins. Co.* (1967) 66 Cal.2d 577, 593 [California had interest in regulating out-of-state insurance company that paid and denied claims in California because "California might be called upon to provide assistance for the persons within its borders who were intended to be financially assisted by the benefits under the policies"]; *Anserv Ins. Services, Inc. v. Kelso* (2000) 83 Cal.App.4th 197, 206-207 [California had interest in regulating automobile liability insurance sold in Mexico to residents of Mexico because "the risks to the insured were those arising from driving in the United States.  This also constitutes a sufficient nexus between the

insurance transactions [the insurance broker] facilitated and the protection of the California public"].)

In the present case, where Continentale issued insurance policies to three California residents, evaluated claims arising in California, paid claims to California providers and terminated coverage while the insureds resided in California, the "substantial interest of California in these transactions is obvious." (*People v. United National Life Ins. Co., supra,* 66 Cal.2d at p. 593.)  However, as discussed, California's interest in the dispute is not dispositive.  On remand, the trial court must weigh that interest against Germany's interest, if any, in hearing the case (see *Stangvik, supra,* 54 Cal.3d at p. 18 [court must "weigh[ ] the competing interests of California and the alternate jurisdiction in the litigation"]) and evaluate those interests within the context of the other relevant private and public interest factors.[10]  In doing so, the court should consider Sharkh's current residence and how it affects the convenience of California as a forum.

---

[10]     Because we remand for the trial court to reconsider the forum non conveniens motion, we need not reach Sharkh's argument the court erred in denying her motion for reconsideration.

21

## DISPOSITION

The amended judgment and order granting the renewed motion for forum non conveniens are reversed, and the cause remanded for further proceedings not inconsistent with this opinion.  Sharkh is to recover her costs on appeal.

                                        PERLUSS, P. J.

We concur:


FEUER, J.


McCORMICK, J.*

---

*       Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.