Filed 2/11/15  Gandhi v. Dakhlallah CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| NEAL GANDHI et al., | B251185 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC502877) |
| v. | |
| ALI DAKHLALLAH, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of the County of Los Angeles, Teresa Sanchez-Gordon, Judge.  Affirmed.

Law Offices of Yalda Yousefi, Yalda Yousefi; Hyun Legal and Dennis S. Hyun for Defendant and Appellant.

Yourist Law Corporation, Bradley J. Yourist, Daniel J. Yourist; Michael AJ Nangano for Plaintiffs and Respondents.

## INTRODUCTION

Defendant and appellant Ali Dakhlallah appeals from the trial court's order denying his special motion to strike (anti-SLAPP motion), which motion was filed pursuant to Code of Civil Procedure section 425.16 (anti-SLAPP statute).[1] The motion challenged the sole cause of action for slander per se asserted in the complaint of plaintiffs and respondents Neal Gandhi (Gandhi) and Centerpointe Therapy, Inc. (Centerpointe) (collectively, plaintiffs). Defendant contends that the trial court erred by failing to rule on his evidentiary objections and in denying his anti-SLAPP motion. We affirm.

## FACTUAL BACKGROUND[2]

Commencing in about 1999, defendant was a licensed Certified Occupational Therapist Assistant. In about July 2007, defendant began on a part-time basis working as an employee for Gandhi and Centerpointe. Gandhi was Centerpointe's president.

In about January 2011, NDGA, Inc. dba Centerpointe, which later merged "into" Centerpointe, entered into a "very lucrative" contract with College Vista Convalescent Home (College Vista) pursuant to which Centerpointe would provide therapy and rehabilitation services to College Vista. Gandhi declared that in or about February 2011, he and defendant entered into a partnership agreement whereby defendant, as Gandhi's partner,[3] was to assist in the servicing and day-to-day operations of College Vista

---

[1]     All statutory citations are to the Code of Civil Procedure unless otherwise noted.

[2]     Pursuant to the applicable standard of review discussed below, we accept as true the evidence favorable to plaintiffs. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325-326.)

[3]     Defendant denies that he was Gandhi's partner; he instead contends that he was always Centerpointe's employee, worked directly under Gandhi's supervision and control at College Vista, and on about July 1, 2011, Gandhi terminated defendant's employment. Gandhi declared that he did not terminate defendant's employment because defendant was his partner.

2

pursuant to the College Vista contract. According to plaintiffs, defendant acted as the managing partner; agreed to advance the associated payroll costs of the operations; was to maintain relationships with the chief executive officer, administrator, staff, and clients of College Vista; and was to otherwise promote Centerpointe. Under the partnership agreement, defendant would receive all of the revenue for the treatment he rendered.

A few months after defendant entered into the partnership agreement, Gandhi learned that defendant published several false statements about Gandhi "to employees, including, the allegations that [Gandhi] was an alleged drug user, [Gandhi] had a substance abuse problem, and that [Gandhi] committed Medicare fraud." Defendant concedes that he had numerous conversations with a College Vista independent contractor who provided speech therapy regarding plaintiffs' allegedly illegal activity of fraud and medical "upcoding." Gandhi denied that he was a drug user, ever had a substance abuse problem, ever committed "Medicare" fraud, and ever operated in an illegal fashion.

When Gandhi learned of defendant's alleged statements, he was "dumbfounded and could not understand why defendant was on a campaign to defame [him] given [their] partnership," but soon thereafter learned that defendant "was attempting to sabotage" Gandhi's business relationship with College Vista for defendant's own financial benefit. According to plaintiffs, based on defendant's false statements, College Vista opened the therapy and rehabilitation services contract to other bidders. Defendant, along with a speech therapist who worked at College Vista, submitted a written bid to College Vista for the work previously under contract with plaintiffs, and made a presentation to College Vista "in hopes of taking over, and removing [Gandhi] and Centerpointe . . . from the facility."[4] Ultimately, plaintiffs "remained at College Vista, but had to reduce [their] billing rates substantially."

---

[4] Defendant declared that he could not and did not intend on "taking over" the College Vista Therapy contract, and that it was "actually impossible" for him to do so because he was not a licensed occupational therapist.

3

## PROCEDURAL BACKGROUND

Plaintiffs filed a complaint against defendant alleging a single cause of action for "Defamation – Slander Per Se." Plaintiffs alleged on information and belief that from about July 2011 through February 2012, defendant "made numerous statements concerning Gandhi and Centerpointe: . . . Gandhi was a drug user and has a substance abuse problem [and Gandhi would work under the influence of drugs]; . . . Gandhi submits false billing records to Medicare; . . . Gandhi regularly commits [M]edicare fraud; Gandhi does not pay his therapists and other employees; and . . . Gandhi and Centerpointe operates [*sic*] illegally." Plaintiffs alleged that these statements were false, and "were heard by several of Centerpointe's employees, independent contractors, and several other persons whose names are not known" to plaintiffs.

Defendant filed an anti-SLAPP motion on the grounds that his alleged defamatory statements constituted protected activities and plaintiffs cannot establish a probability of prevailing on the merits. Defendant requested attorney fees. Plaintiffs opposed the motion, and filed objections to defendant's declaration submitted in support of his motion. Defendant filed objections to the declarations submitted by plaintiffs in support of their opposition to the motion. The trial court issued a minute order[5] stating that defendant's anti-SLAPP motion, and his request for attorney fees, were denied.

## DISCUSSION

### A.  Evidentiary Objections

Defendant contends that we should reverse the order denying his anti-SLAPP motion because the trial court erred by failing to rule on his evidentiary objections. Citing *Reid v. Google, Inc*. (2010) 50 Cal.4th 512, defendant argues that when the trial court fails to rule on evidentiary objections the reviewing court presumes that those

---

[5]  Defendant did not include in the record the reporter's transcript of the hearing.

4

objections have been overruled. Defendant contends that the reviewing court reviews a trial court's ruling on evidentiary objections for abuse of discretion, and had the trial court ruled on defendant's objections, "Plaintiffs would have had absolutely no evidence to establish a probability of prevailing" on the merits. We disagree.

The trial court's minute order does not state whether it ruled on defendant's objections. To the extent that defendant contends that we should rule on his objections, he abandoned the contention as to most of the objections by failing to make any appellate contention supported by argument and citation to authority. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.) With the exception to stating that Gandhi's supplemental declaration should be disregarded because it was filed after the deadline imposed by section 1005, subdivision (b), defendant makes no argument with citations to authorities supporting the merits of his objections. As to those objections, defendant merely states that he made objections, and in a summary fashion, restates the grounds for the objections.

With regard to defendant's objection that Gandhi's supplemental declaration (characterized by defendant as a "sur reply") should be disregarded because it was filed after the deadline imposed by section 1005, subdivision (b), that section provides in part that, "All papers opposing a motion. . . shall be filed with the court and a copy served on each party at least nine court days . . . before the hearing." Gandhi's supplemental declaration was filed two days before the hearing. The trial court has discretion to consider papers filed after the deadlines set forth in section 1005, subdivision (b) (*Guimei v. General Electric Co.* (2009) 172 Cal.App.4th 689, 703-704), and we have discretion to consider improper surreply briefs. (*City of Arcadia v. State Water Resources Control Bd.* (2010) 191 Cal.App.4th 156, 180.) We exercise our discretion and overrule defendant's objection that Gandhi's supplemental declaration should be stricken in its entirety because it was filed after the deadline set forth in section 1005, subdivision (b).

The trial court's failure to rule on defendant's objections, if there was such a failure, only means that we can review those objections on appeal. (*Reid v. Google, Inc.*, *supra*, 50 Cal.4th at pp. 534-535.) As noted, defendant has not provided any argument concerning the evidentiary objections, except as to the late filed document. Moreover,

5

even if all of defendants objections should have been sustained, the outcome would not be affected.

**B.      Anti-SLAPP motion**

Defendant contends that the trial court erroneously denied his anti-SLAPP motion because plaintiffs did not establish a probability of prevailing on the merits.  The trial court did not err.

*1.      Standard of Review*

We review de novo the trial court's order denying an anti-SLAPP motion. (*Flatley v. Mauro*, *supra*, 39 Cal.4th at pp. 325-326; *Christian Research Institute v. Alnor* (2007) 148 Cal.App.4th 71, 79].)  "'We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based."  (§ 425.16, subd. (b)(2).)  However, we neither "weigh credibility [nor] compare the weight of the evidence.  Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law."  [Citation.]'  [Citation.]"  (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 326.)

*2.      Applicable Law*

"'A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances.  [Citation.]  The Legislature enacted Code of Civil Procedure section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights.  [Citation.]'  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056 [39 Cal.Rptr.3d 516, 128 P.3d 713].)"  (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 34.)  "The goal [of section 425.16] is to eliminate meritless or retaliatory litigation at an early stage

of the proceedings." (*Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 806.)

Section 425.16, provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) In ruling on a special motion to strike under section 425.16, courts engage in a two-step process. "'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.]" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 712, overruled on another ground as stated in *Burrill v. Nair* (2013) 217 Cal.App.4th 357, 380.) "'"The defendant has the burden on the first issue, the threshold issue; the plaintiff has the burden on the second issue. [Citation.]' [Citation.]" [Citations.]'" (*Rohde v. Wolf*, *supra*, 154 Cal.App.4th at pp. 34-35.) "'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' [Citation.]" (*Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456.)

Plaintiffs' burden as to the second prong of the anti-SLAPP statute is akin to that of a party opposing a motion for summary judgment. (See *Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 990.) So, for plaintiffs to establish a probability of success in opposing an anti-SLAPP motion, they just have to present a prima facie case—e.g., by showing triable issues of fact. (See *Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 469; *Bergman v. Drum* (2005) 129 Cal.App.4th 11, 14.)

7

*3.    Analysis*

We do not have to reach the issue of whether the alleged statements satisfy the requirements of the first prong of the anti-SLAPP statute—i.e., whether it was a protected activity. Because plaintiffs have demonstrated the required probability of prevailing on their claim, the trial court did not err.

"Slander is a species of defamation. 'Defamation constitutes an injury to reputation; the injury may occur by means of libel or slander. [Citation.] . . . [Citations.] A false and unprivileged *oral* communication attributing to a person specific misdeeds or certain unfavorable characteristics or qualities, or uttering certain other derogatory statements regarding a person, constitutes slander.' [Citation.]" (*Nguyen-Lam v. Cao* (2009) 171 Cal.App.4th 858, 867.) "[C]ertain slanderous statements are considered slanderous per se, and actionable without proof of special damage. However, the slander statute expressly limits slander per se to four categories of defamatory statements, 'including statements . . . tending directly to injure a plaintiff in respect to the plaintiff's [profession, trade, or] business by imputing something with reference to the plaintiff's [profession, trade, or] business that has a natural tendency to lessen its profits.' (*Mann* [*v. Quality Old Time Service, Inc*. (2004)] 120 Cal.App.4th [90,] 106-107; see Civ. Code, § 46.)" (*Burrill v. Nair*, *supra*, 217 Cal.App.4th at p. 382.) Whether a statement constitutes slander per se is a question for the court. (*Regalia v. The Nethercutt Collection* (2009) 172 Cal.App.4th 361, 368.)

Plaintiffs submitted evidence that defendant's alleged statements were false. Gandhi declared that he was not a drug user, never had a substance abuse problem, never committed "Medicare" fraud, and never operated in an illegal fashion. As noted above, we accept as true the evidence favorable to the plaintiff. (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 326.) Defendant did not object to this evidence. For purposes of defendant's anti-SLAPP motion, plaintiffs have submitted sufficient facts for a prima facie case that defendant's alleged statements were false.

In addition, defendant has not at this stage established sufficiently that the communications were privileged under the common interest privilege. (Civil Code, § 47,

8

subd. (c)).  Under Civil Code section 47, subdivision (c), defendant bears the initial burden of establishing that the statement in question was made on a privileged occasion, and thereafter the burden shifts to plaintiffs to establish that the statement was made with malice.  (*Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1202-1203.)  Plaintiffs alleged that defendant's defamatory statements were heard not only by several of Centerpointe's employees, but by unspecified independent contractors and several other persons whose names are not known to plaintiffs.

Plaintiffs also submitted a prima facie case that defendant's alleged statements were made with malice.  Gandhi declared that when defendant made the alleged statements he "was attempting to sabotage" Gandhi's business relationship with College Vista for defendant's own financial benefit; based on defendant's false statements, College Vista opened the therapy and rehabilitation services contract to other bidders; and defendant submitted a written bid to College Vista, and made a presentation to College Vista, "in hopes of taking over, and removing [Gandhi] and Centerpointe . . . from the facility."  Defendant did not object to this evidence.  For purposes of defendant's anti-SLAPP motion, his statements were not subject to the "common interest" privilege.

**DISPOSITION**

The judgment is affirmed.  Plaintiffs are awarded their costs on appeal.  The trial court may determine the issue of attorney fees under the anti-SLAPP statute.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MOSK, J.

We concur:

TURNER, P. J.

KRIEGLER, J.